## WILLIAMS v. ARLINGTON HOTEL CO.

Circuit Court of Appeals, Eighth Circuit.
October 17, 1927.

No. 7659.

**1. United States ⊛3—United States jurisdiction is exclusive, where state cedes land for governmental purposes; but, if acquired in other ways, United States holds merely as proprietor (Const. art. 1, § 8).**

Where state cedes land to the United States for governmental purposes, defined in Const. art. 1, § 8, jurisdiction of the United States is exclusive; but, if land is acquired or held in any other way, United States holds merely as proprietor, and jurisdiction of state is complete except that it cannot interfere with use of land for governmental purposes.

**2. United States ⊛3—Where land is not acquired by United States under constitutional provision, state may cede such jurisdiction as it sees fit (Const. art. 1, § 8).**

Where land is acquired by United States in some way other than under Const. art. 1, § 8, state may cede such jurisdiction as it sees fit

to government, and extent of jurisdiction of government depends on terms of such cession.

**3. United States ⊛3—Cession by state of control and jurisdiction over reservation to United States was valid, and applied to land not used for governmental purposes (Acts Ark. 1903, p. 52; 16 USCA §§ 372–383; Const. art. 1, § 8).**

Cession by state of Arkansas, under Acts Ark. 1903, p. 52, of control and jurisdiction over Hot Springs reservation to United States, reserving only rights to serve state process therein and to tax private property therein, accepted by Congress under Act April 20, 1904 (16 USCA §§ 372–383), United States having made no reservation of control or jurisdiction when state was admitted to Union, was valid, and applied to hotel property not being actually used for governmental purposes, permitted in Const. art. 1, § 8.

**4. United States ⊛3—State laws existing at time of cession of jurisdiction to United States continue on reservation, where not inconsistent with United States laws (Acts Ark. 1903, p. 52; 16 USCA §§ 372–383).**

Law of Arkansas as to liability of innkeepers for property of guests within hotel, in existence at time of cession of control and jurisdiction over Hot Springs reservation under Acts Ark. 1903, p. 52, and acceptance by Congress under Act April 20, 1904 (16 USCA §§ 372–383), continued on reservation, where not inconsistent with laws of United States, or where not abrogated by Congress after cession.

In Error to the District Court of the United States for the Eastern District of Arkansas; Jacob Trieber, Judge.

Action by Elise Williams against Arlington Hotel Company. Judgment for defendant (15 F.[2d] 412), and plaintiff brings error. Reversed and remanded.

William Waller, of Nashville, Tenn. (Charles S. Harley, of Little Rock, Ark., and Seth M. Walker, of Nashville, Tenn., on the brief), for plaintiff in error.

Thomas K. Martin, of Hot Springs, Ark. (Martin, Wootton & Martin, of Hot Springs, Ark., on the brief), for defendant in error.

Before STONE and VAN VALKENBURGH, Circuit Judges, and POLLOCK, District Judge.

STONE, Circuit Judge. The plaintiff in error brought an action for personal property consumed in the burning of the Arlington Hotel at Hot Springs, Arkansas, while she was a guest thereof. The hotel was located on the Hot Springs reservation. This reservation was public land at all times and was reserved by the United States for its own purposes. At the time the state of Arkansas was admitted into the Union, the United States made no reservation of any political control or jurisdiction. In 1903, the state

passed an act (February 21, 1903 [Acts Ark. 1903, p. 52]), expressly ceding control and jurisdiction over this reservation to the United States, reserving only the rights to serve state process therein and to tax private property therein. This cession was expressly accepted by Congress through the Act of April 20, 1904 (33 Stat. 187; 16 USCA §§ 372–383). At the time of this cession and acceptance, the law of Arkansas as to the liability of innkeepers for the property of guests within the hotel was analogous to that of an insurer. In 1913 a state law was enacted (Crawford & Moses' Digest of 1921, §§ 5564–5567, inclusive), changing such liability so that innkeepers should respond only where the fire causing the loss was either intentionally or negligently started by the innkeeper or his employees.

This action is based on the law existing before the act of 1913 and is not predicated on any liability which could exist under that act. Therefore, if that act is applicable, this action cannot be sustained. Plaintiff claims such act is not applicable because this hotel was located upon a reservation as to which exclusive jurisdiction and political power had been ceded to and accepted by the United States prior to the passage of the act of 1913 and that only such laws of the state as were in existence at the time of the cession of authority to the United States are applicable. The trial court decided that the jurisdiction of the state on the reservation had not been affected as to this hotel property because it was not being actually used for governmental purposes and the state had no power to cede nor the government to accept political power and jurisdiction over such parts of the reservation as were not in actual use for the governmental purposes permitted in article 1, § 8 of the Constitution. From a judgment entered on sustaining a demurrer to the petition, this writ of error is brought.

[1, 2] We think the trial court was in error under the authority of the three so-called Leavenworth reservation cases (Ft. Leavenworth Railroad Co. v. Lowe, 114 U. S. 525, 5 S. Ct. 995, 29 L. Ed. 264, Chicago, R. I. & P. R. Co. v. McGlinn, 114 U. S. 542, 5 S. Ct. 1005, 29 L. Ed. 270, and Benson v. United States, 146 U. S. 325, 13 S. Ct. 60, 36 L. Ed. 991). In the first of these cases, Mr. Justice Field sets out that there are three ways in which the United States can acquire or hold land within the limits of a state. The first of these ways is in accordance with article 1, § 8, of the Constitution, where a cession is made by the state of the land for governmental purposes defined in that section; the second is

by purchase or condemnation of land belonging to a private party; the third is by having public land at the time of the admission of the state into the Union. The opinion declares that the manner of acquiring the land has controlling effect upon the political control and the sovereign jurisdiction of the government. The rule is that if the cession is made under the above provision of the Constitution, the jurisdiction of the United States is exclusive; that if the land is acquired or held in any other way, the United States holds merely as a proprietor and the jurisdiction of the state is complete, except that it cannot interfere with the use of the land for governmental purposes; that, if the land is not acquired under the above Constitutional provision, the state may cede such jurisdiction as it sees fit to the government and that the extent of the jurisdiction of the government depends upon the terms of such cession.

The trial court construes these decisions as meaning that such cession of jurisdiction could not be made to apply except as to such parts of the land as were actually in use by the government for its own purposes. Such is not the meaning of those decisions. They all related to land in the Leavenworth reservation which was not being so used. In the Lowe Case (page 527 [5 S. Ct. 996]) the court says:

"The United States, therefore, retained, after the admission of the state, only the rights of an ordinary proprietor; except as an instrument for the execution of the powers of the general government, that part of the tract, which was actually used for a fort or military post, was beyond such control of the state, by taxation or otherwise, as would defeat its use for those purposes. So far as the land constituting the reservation was not used for military purposes, the possession of the United States was only that of an individual proprietor. The state could have exercised, with reference to it, the same authority and jurisdiction which she could have exercised over similar property held by private parties. This defect in the jurisdiction of the United States was called to the attention of the government in 1872"

—and cured through cession by an Act of the Kansas Legislature on February 22, 1875 (Laws Kan. 1875, c. 66), which act is, in all essentials, similar to the act of the state of Arkansas now being considered. In the Benson Case (page 331 [13 S. Ct. 62]) the court says:

"It is contended by appellant's counsel that, within the scope of those decisions, jurisdiction passed to the general government

only over such portions of the reserve as are actually used for military purposes, and that the particular part of the reserve on which the crime charged was committed was used solely for farming purposes. But in matters of that kind the courts follow the action of the political department of the government. The entire tract had been legally reserved for military purposes. United States v. Stone, 2 Wall. 525, 537 [17 L. Ed. 765]. The character and purposes of its occupation having been officially and legally established by that branch of the government which has control over such matters, it is not open to the courts, on a question of jurisdiction, to inquire what may be the actual uses to which any portion of the reserve is temporarily put. There was, therefore, jurisdiction in the Circuit Court; and the first contention of plaintiff in error must be overruled."

[3] The above quotations show clearly that those cases involved portions of the reservation not being then used for military or other governmental purposes. Therefore, we think they are directly in point here as to the validity of the cession made by the state of Arkansas.

[4] The McGlinn Case is direct authority for the contention made by plaintiff in error that the laws of the state in existence at the time of the cession continue upon the reservation where not inconsistent with the laws of the United States or where not abrogated by Congress after the cession.

We think the judgment should be reversed and remanded for a new trial; and it is so ordered.