## UNITED STATES v. CERTAIN LANDS. IN CITY OF DETROIT et al.

### No. 13842.

District Court, E. D. Michigan, S. D. at Law.
Oct. 23, 1935.

346

Gregory H. Frederick, U. S. Dist. Atty., and Dean Lucking, Sp. Atty., both of Detroit, Mich. (Waldo K. Greiner, of Detroit, Mich., of counsel), for petitioner.

Leslie T. Jones, of Detroit, Mich., for respondent Clarke.

TUTTLE, District Judge.

This is a petition filed herein by the United States for the condemnation, under the power of eminent domain, of certain parcels of land in the city of Detroit, in this district, pursuant to the following determination and request of the United States Federal Emergency Administrator of Public Works, as shown by said petition:

"Pursuant to the authority contained in the National Industrial Recovery Act of June 16, 1933, under the direction of the President, I have prepared a comprehensive program of public works and have included therein a low-cost housing and slum-clearance project in Detroit, Michigan, known as the East Side Project, being Project No. 1201 of the Housing Division of the Public Works Administration. A tract of land in the City of Detroit shown on the plat of survey prepared by Warner & Warner, Civil Engineers, has been selected as the site for this project, which site includes 378 separate parcels of land and a number of contiguous city blocks.

"I have determined that it is necessary and advantageous to the interests of the United States that condemnation proceedings be instituted for all of the land included in the aforesaid site. Therefore, I respectfully request that you cause the necessary proceedings in condemnation to be instituted for the acquisition of said land, together with all improvements thereon and all leaseholds and other interests therein."

The cause is now before the court on a motion by one of the respondents, George W. Clarke, to dismiss the petition, on the ground that this proceeding is an attempt by the petitioner, the United States, to take private property for a purpose for which it has no constitutional authority to exercise the power of eminent domain. Whether the petitioner has that authority is the ultimate question now presented for decision.

The petition, the factual allegations of which must, of course, in the consideration of this motion to dismiss, be accepted as true, after referring to the aforesaid determination and request of the Federal Emergency Administrator, and to the Act of Congress and the project therein mentioned, states the purpose for which these lands are here sought to be taken, and the reasons prompting such proposed taking, as follows:

"That the United States of America, acting through said Administrator, in pursuance of the provisions of the aforesaid Act of June 16, 1933 [48 Stat. 195] proposes to construct, reconstruct, alter, or repair under public regulation or control, on the lands herein mentioned, the aforesaid low-cost housing and slum-clearance project, which lands are needed for such public use, improvement and purposes.

"That the said lands herein mentioned constitute a slum in a part of a blighted residential area of the City of Detroit, wherein the housing conditions are detrimental to the public peace, health, safety, morals and welfare. That nearly all of the housing structures on the said lands herein sought to be acquired are old and dilapidated, a large proportion thereof being without sanitary plumbing and more than half of said structures being unfit for human habitation without extensive and costly repairs, as is disclosed by surveys of said area made by officials of the City of De-

troit. That an excessive amount of tuberculosis and pneumonia has existed in said area, the rate thereof as shown by public health surveys being many times that of the City in general, which diseases are closely and directly related in the frequency of their occurrence to poor housing conditions, such housing conditions thereby presenting to the City of Detroit a potential health hazard of a major character. That an unusually high rate of crime and juvenile delinquency exists in said area, such rate being several times that of the City at large. That the tax delinquency with respect to said lands is approximately 92% as contrasted to a rate of approximately 22% in the City at large. That very few occupants of said housing structures own the premises wherein they dwell. That the public expenditures for police, fire and health protection and welfare costs in this area are far in excess of the City average while on the other hand the City collects comparatively nominal revenues from taxes levied on said lands. That certain lands within said area are devoted to uses other than residential, which uses are inimical to public peace, health, safety, morals and welfare. That the present housing conditions on said lands, which are detrimental to the social standards of the community, are beyond rehabilitation by private enterprise and depress values of property in contiguous neighborhoods. That the Detroit Housing Commission was appointed by the Governor of the State of Michigan pursuant to law and has subsequently made a study over an extended period of the housing conditions of the City of Detroit in general and this area in particular, among others, several hundred people having been employed for this purpose. That the City of Detroit by its governing body, the Common Council, and also through the Detroit Housing Commission, has appealed to the United States of America for this slum clearance and low cost housing project, as a public use, improvement and benefit and has invited and fostered the institution of this project."

■ It is an elementary rule of law, too well settled and fundamental to warrant discussion or the citation of authorities, that private property may not be taken, either by the United States or by any state or state agency, except for a public use. Does the use, then, for which these lands are thus sought to be taken by the United States constitute a public use within the meaning of the law? In the recent case of United States v. Certain Lands in City of Louisville, 78 F.(2d) 684, 688, involving the same facts, with a single exception hereinafter noted, as are involved herein, this same question was presented to the Circuit Court of Appeals for this Circuit, and that court, after carefully and fully analyzing and discussing the applicable legal rules and principles, answered such question adversely to the contentions of the petitioner, holding that the taking of private property for the carrying out of a low-cost housing and slum clearance project, such as the government seeks to effect here, does not constitute a taking for a public use, and is not "within the scope of the powers of the federal government," and is, therefore, unauthorized and invalid.

■ It is, however, urged by the petitioner that the decision just cited is not controlling in the present case because here it appears, as it did not in the case in which that decision was rendered, that the state of Michigan, by section 410 of the Compiled Laws of 1929, has conferred on the United States the authority and privilege of condemning these lands for the purpose for which the petitioner is here attempting to take them. The statute thus invoked provides as follows:

"The People of the State of Michigan enact, That the United States of America shall have power to purchase, or to condemn, in the manner prescribed by its laws, upon making just compensation therefor, any land in the state of Michigan required for custom-houses, arsenals, lighthouses, national cemeteries, or for other purposes of the government of the United States."

Assuming, without deciding, that the state of Michigan has the power to grant to the United States, and that the latter has constitutional authority to accept from said state, the "power to purchase or to condemn" any property for any purpose, it will be noted that by this statute the state has undertaken to authorize condemnation by the United States only of land "required for custom-houses, arsenals, lighthouses, national cemeteries, or for other purposes of the government of the United States." Applying the rule of ejusdem generis, the familiar canon of statutory construction to the effect that, as it is expressed in 19 Corpus Juris, at page 1255, "where an enumeration of specific things is followed by some more general word or phrase, such general word or phrase is to be held to re-

348

fer to things of the same kind," it seems clear that the "land in the state of Michigan required for * * * other purposes of the government of the United States" to which this Michigan statute refers is land required for governmental purposes similar, in kind, to those of the "custom-houses," and other properties specified in said statute, such, for example, as post offices, forts, navy yards, and other structures and places actually and officially used by the United States government, and that such statute does not purport to authorize the condemnation of land for some other purpose, such as that connected with the housing and slum clearance project here involved.

Even if, however, the words "other purposes of the government of the United States," as used in this Michigan statute, should be construed as embracing the purpose underlying the present proceeding, it is manifest that, in view of the decision of the Circuit Court of Appeals already mentioned, which, of course, is conclusive and binding upon this court, such purpose is not, in the language of that court, "within the scope of the powers of the federal government," and hence cannot be, in contemplation of law or within the meaning of such Michigan statute, a purpose of the government of the United States. Clearly, that statute has no application here.

It is further argued on behalf of the petitioner that, by Act No. 18 of the Public Acts of Michigan, Extra Session of 1933, the Legislature of Michigan has authorized the creation by the city of Detroit of a "housing commission," with power to recommend to said city the prosecution of condemnation proceedings in aid of housing projects and has declared such projects to be "for public purposes within the meaning of the constitution, state laws and charters relative to the power of eminent domain" (section 10), and that therefore the taking here sought should be held to constitute a taking for a public use, if not of the United States at least for the state of Michigan, and cognizable as such by the United States, in co-operation with said state. I am unable to agree with this contention. No statute, either of the United States or of Michigan, has been cited by counsel, and I know of none, purporting to authorize the United States to act as the agent, agency, or representative of said state in connection with the condemnation of property for the use, benefit, or public purpose of such state. Moreover, as already noted, the fundamental law of both the United States and the state of Michigan prohibits the taking of private property except for public use, and the question whether the condemnation of such property for the purpose of establishing a housing and slum clearance project such as that involved here is for a public use, has been authoritively determined, by the decision in the Louisville Case already mentioned, against the contention of the petitioner.

There is no occasion to pursue the subject further. For the reasons stated, I reach the conclusion that the motion to dismiss the petition should be granted. An order will be entered accordingly.