## OKLAHOMA CITY et al. v. SANDERS.
### No. 1561.

Circuit Court of Appeals, Tenth Circuit.
Jan. 8, 1938.

324

Leon Shipp, Asst. Municipal Counselor, of Oklahoma City, Okl. (A. L. Jeffrey, Municipal Counselor, of Oklahoma City, Okl., on the brief), for appellants.

John H. Shirk, of Oklahoma City, Okl. (Harris L. Danner, Charles E. Earnheart, and George H. Shirk, all of Oklahoma City, Okl., on the brief), for appellee.

Before BRATTON and WILLIAMS, Circuit Judges, and SYMES, District Judge.

WILLIAMS, Circuit Judge.

This is an action brought by a contractor (appellee) engaged in the construction of a so-called low cost housing project for the United States to restrain a city and certain of its officers from attempting to enforce certain municipal ordinances in

connection with such construction, and from instituting criminal prosecutions under said ordinances against said contractor for failure to comply therewith. Reference will be made to the parties as they appeared in the court below.

According to the allegations of the bill, plaintiff is a resident of Oklahoma City, and defendants are also residents of said city, and the action involves the interpretation and construction of federal laws, the amount involved exceeding $3,000 exclusive of interest and cost.

During the month of October, 1935, the United States purchased certain land situated within the boundaries of said city for the sole purpose of constructing buildings and improvements thereon, known as a low cost housing project, pursuant to certain acts of Congress. On July 9, 1936, Horatio Hackett, acting as agent of the United States government, entered into a contract with plaintiff in which the latter obligated himself to construct all buildings and improvements on Rotary Park Housing Project H-8101 and to furnish all materials and labor necessary thereto.

Plaintiff commenced operations and construction under the contract and continued same except for delays occasioned by defendants in seeking to enforce certain municipal codes and ordinances concerning inspections and permits. Plaintiff and his employees were neither using nor operating on any land outside of the boundaries of the tracts of land purchased by the United States. In September, 1936, defendants caused plaintiff to be arrested, charged with the violation of certain municipal ordinances relating to the procurement of licenses, the giving of bonds and the submitting to inspections. He was found guilty and a fine assessed against him and defendants announced their purpose to institute separate prosecutions for each and every day plaintiff continued the construction without compliance with such ordinances, and plaintiff avers that in the event he be required to comply with the requirements of the defendants, his cost of construction would increase at least $50,000.00 and his selection of employees would be greatly limited. He asked that defendants be restrained from filing informations against him, and causing his arrest for the violation of the municipal ordinances until a hearing could be had, and that thereafter the defendants be enjoined from committing the acts of which complaint was made.

A temporary restraining order having been issued, a motion to dismiss for want of jurisdiction and on other grounds having been made and heard was overruled. On stipulated facts the case was submitted for final hearing, in which it was recited, among other things, that soon after plaintiff began the construction of the project, the authorities of said city determined that such construction and improvement was subject to certain ordinances relating to licenses, bonds, and inspections, and plaintiff declining to comply therewith on the ground that the national government had exclusive jurisdiction over such property, the officials of said city caused him to be arrested, and the municipal court found him guilty and imposed against him a fine, said officials declaring that daily arrests would be made if plaintiff continued with the work without first complying with the ordinances. A permanent injunction having been awarded, the city and its officers appeal.

Plaintiff (appellee here) asked that the appeal be dismissed for the reason that the questions presented have become moot. The construction work has been completed and the United States government has accepted the completed work and received possession thereof. Under the provisions of the ordinances, each day that plaintiff continued to operate without complying with their terms constituted a new, separate, and distinct offense. If the injunction was improvidently obtained, plaintiff still remains subject to prosecution for all offenses committed during the period in which the injunction was in effect. Plaintiff cannot secure an improvidently issued writ of injunction restraining the city from its right of prosecution, and then upon completion of the work be heard to say that all questions are moot. Southern Pacific Terminal Co. v. Interstate Commerce Commission, 219 U.S. 498, 31 S.Ct. 279, 55 L.Ed. 310; Berdie v. Kurtz, 9 Cir., 75 F.2d 898; and McCluer v. Super Maid Cook-Ware Corporation, 10 Cir., 62 F.2d 426.

As to the jurisdiction of the court below, it is not questioned that the amount in controversy exceeds $3,000, excluding interest and costs, no diversity of citizenship existing. The interpretation and application of a federal statute, 40 U.S.C.A. § 402, providing for the construction of a program of public works, including slum clearing projects, and an Act of Congress of June 29, 1936, 40 U.S.C.A. § 421, is

involved. Jurisdiction as to this case rests on the construction of federal statutes, the controversy being one arising under the laws of the United States. David Mark Cummings v. City of Chicago, 188 U.S. 410, 23 S.Ct. 472, 47 L.Ed. 525; Tennessee v. Union & Planters' Bank, 152 U.S. 454, 14 S.Ct. 654, 38 L.Ed. 511; Hopkins v. Walker, 244 U.S. 486, 37 S.Ct. 711, 61 L.Ed. 1270; First National Bank v. Williams, 252 U.S. 504, 40 S.Ct. 372, 64 L.Ed. 690; King County v. Seattle School District, 263 U.S. 361, 44 S.Ct. 127, 68 L.Ed. 339; Cohens v. Virginia, 6 Wheat. 264, 5 L.Ed. 257; Mathers & Mathers v. Urschel, 10 Cir., 74 F.2d 591; Mudd v. Perry, 8 Cir., 25 F.2d 85; and Jefferson v. Gypsy Oil Co., 8 Cir., 27 F.2d 304.

Section 201(a) of title 2 of the National Industrial Recovery Act authorizes the President to create a Federal Emergency Administration of Public Works and to appoint an Administrator. Section 202 provides that the Administrator, under the direction of the President, shall prepare a comprehensive program of public works which shall include, among other things, construction, reconstruction, alteration ,or repair under public regulation or control of low-cost housing and slum-clearance projects. Section 203 authorizes (a) the construction of any public works project included in the program prepared by the Administrator in accordance with the previous section, and (b) the acquisition by purchase or the exercise of the power of eminent domain of any real or personal property in connection with any such project. 48 Stat. 200, 40 U.S.C.A. §§ 401 (a), 402, 403. The land described in the bill was acquired and the project authorized under the terms of said statute.

By article 1, section 8, clause 17 of the Constitution of the United States, it is provided that the Congress shall have exclusive power to legislate in relation to property purchased by the United States with the consent of the state in which such property is located.

By section 10053 of Oklahoma Statutes 1931, 80 Okl.St.Ann. § 1: "The consent of the State of Oklahoma is hereby given, in accordance with the seventeenth clause, eighth section, of the first article of the Constitution of the United States, to the acquisition by the United States, by purchase, condemnation or otherwise, of any land in this State required for sites * * * for needful public buildings or for any other purposes for the government."

By section 10054, 80 Okl.St.Ann. § 2: "Exclusive jurisdiction in and over any lands so acquired by the United States shall be, and the same is hereby ceded to the United States for all purposes except the service upon such sites of all civil and criminal process of the courts .of this State; but the jurisdiction so ceded shall continue no longer than the United States shall own such lands."

The taking of property by condemnation proceedings under said sections 202 and 203 has been held not to be such a public use as will authorize the exercise of the power of eminent domain. United States v. Certain Lands in City of Louisville, 6 Cir., 78 F.2d 684, 686, by a divided court, a writ of certiorari having been granted, 296 U.S. 567, 56 S.Ct. 154, 80 L.Ed. 400, the majority specifically placing their decision "upon the objection" as "to * * * the lack of right in the government to exercise the power of eminent domain for the purposes contemplated" in said sections 202 and 203. See, also, Dean v. County Board of Education, 210 Ala. 256, 97 So. 741, and Utah Power & Light Co. v. United States, 243 U.S. 389, 37 S.Ct. 387, 61 L.Ed. 791, and United States v. Tucker, D.C., 122 F. 518.

The taking of land in a city for public parks and squares in the District of Columbia, by authority of an act of Congress, is for a public use. Shoemaker v. United States, 147 U.S. 282, 13 S.Ct. 361, 37 L.Ed. 170.

In United States v. Gettysburg Electric Ry. Co., 160 U.S. 668, 16 S.Ct. 427, 429, 40 L.Ed. 576, it is said: "In these acts of congress, and in the joint resolution, the intended use of this land is plainly set forth. It is stated in the second volume of Judge Dillon's work on Municipal Corporations (4th Ed., § 600) that, when the legislature has declared the use or purpose to be a public one, its judgment will be respected by the courts, unless the use be palpably without reasonable foundation. Many authorities are cited in the note, and, indeed, the rule commends itself as a rational and proper one."

In Fallbrook Irrigation Dist. v. Bradley, 164 U.S. 112, 17 S.Ct. 56, 63, 41 L.Ed. 369, it is said: "It is obvious, however, that what is a public use frequently and largely depends upon the facts and circumstances surrounding the particular subject-matter in regard to which the character of the use is questioned."

See, also, Clark v. Nash, 198 U.S. 361, 25 S.Ct. 676, 49 L.Ed. 1085, 4 Ann.Cas. 1171; Mt. Vernon-Woodberry Cotton Duck Co. et al. v. Alabama Interstate Power Co., 240 U.S. 30, 36 S.Ct. 234, 60 L.Ed. 507; Strickley et al. v. Highland Boy Gold Mining Co., 200 U.S. 527, 26 S.Ct. 301, 50 L.Ed. 581, 4 Ann.Cas. 1174; and Rindge Co. et al. v. County of Los Angeles, 262 U.S. 700, 43 S.Ct. 689, 693, 67 L.Ed. 1186.

The cases referred to as to a public use, with the exception of Shoemaker v. United States, supra, and United States v. Gettysburg Electric Ry. Co., supra, involve provisions of state statutes, but in every case the question was raised that the use involved was a private one and in each instance the Supreme Court of the United States held that under the United States Constitution same was a public use; in Fallbrook Irrigation Dist. v. Bradley, supra, it being said: "We do not assume that these various statements, constitutional and legislative, together with the decisions of the state court, are conclusive and binding upon this court upon the question as to what is due process of law, and, as incident thereto, what is a public use. As here presented, these are questions which also arise under the federal constitution, and we must decide them in accordance with our views of constitutional law."

In United States v. Certain Lands in City of Detroit, 12 F.Supp. 345, by a District Court in the Sixth Circuit, in which United States v. Certain Lands in City of Louisville, Jefferson County, Kentucky et al., supra, was decided, said holding by the Sixth Circuit Court of Appeals being binding upon the said district judge.

In Spahn v. Stewart, 268 Ky. 97, 103 S. W.2d 651, in which an act of the Legislature of Kentucky authorizing a program of slum-clearance and low-cost housing was involved, such slum-clearance and low-cost housing project is held to be a public purpose and that the power of eminent domain may be exercised for the acquisition of property to be devoted to that purpose.

■ The Congress of the United States has declared such a low-cost housing and slum-clearance project to be a public use, authorizing the acquisition of lands for such purpose, either by purchase or the exercise of the power of eminent domain. Through such a project elimination of unsanitary and unhealthy conditions is brought about by clearing such premises of such buildings, and removing the de-

graded and unwholesome conditions existing in such surroundings, pertaining to home-life in cities, thereby preventing illness, disease, and crime, and aiding and benefiting the health, morals, and safety of the community. It may be that some parts of the nation may not immediately feel the benefits of such activity, but the increasing of employment and stimulation of industry, and reducing illness, disease, and crime, has a beneficial effect upon the nation as a whole and promotes the public welfare.

In Rindge Co. et al. v. County of Los Angeles, supra, it is said: "Public uses are not limited, in the modern view, to matters of mere business necessity and ordinary convenience, but may extend to matters of public health, recreation and enjoyment. * * * Air, exercise and recreation are important to the general health and welfare."

Zoning in congested urban communities is a precursor of low-cost housing and slum-clearance projects. Village of Euclid et al. v. Ambler Realty Company, 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed. 303, 54 A.L.R. 1016.

■ Under our federal system, the municipal or state police power having been lodged and reserved in the state, a corresponding power in appropriate cases naturally arises under the general welfare provision contained in the Federal Constitution, article 1, § 8, cl. 1.

■ Though the United States lacks the police power reserved to the states by the Tenth Amendment, yet, when it exerts a power conferred on it by the Federal Constitution, it is no valid objection that such exercise may be attended by the same incidents which attend the exercise by a state of its police power, or that it may tend to accomplish a similar purpose. Hamilton v. Kentucky Distilleries & Warehouse Co., 251 U.S. 146, 40 S.Ct. 106, 64 L.Ed. 194, and authorities therein cited.

■ The cession of exclusive jurisdiction over premises acquired by the United States government, included the power of regulation and control in such matters as ordinarily fall within the police power of the state. United States v. Cornell, 2 Mason 60, 25 Fed.Cas. 646, 647, No. 14867; State of Ohio v. Thomas, 173 U.S. 276, 277, 19 S.Ct. 453, 43 L.Ed. 699; United States v. Hunt, D.C.Ariz., 19 F.2d 634; David Mark Cummings v. City of Chicago, supra; Arizona v. California, 283 U.S. 423, 51 S. Ct. 522, 75 L.Ed. 1154; Williams v. Arling-

ton Hotel Co., 8 Cir., 22 F.2d 669; and People v. Mouse, 203 Cal. 782, 265 P. 944.

 The Act of June 29, 1936, 40 U.S. C.A. § 421, does not vest in Oklahoma City the right to enforce the provisions of ordinances in question.

"The acquisition by the United States of any real property acquired before or after June 29, 1936 in connection with any low-cost housing, or clum-clearance project constructed before or after June 29, 1936 with funds allotted to the Federal Emergency Administration of Public Works pursuant to sections 401 to 411 of this title, the Emergency Relief Appropriation Act of 1935, or any other law, shall not be held to deprive any State or political subdivision thereof of its civil and criminal jurisdiction in and over such property, or to impair the civil rights under the local law of the tenants or inhabitants on such property; and insofar as any such jurisdiction has been taken away from any such State or subdivision, or any such rights have been impaired, jurisdiction over any such property is hereby ceded back to such State or subdivision. (June 29, 1936, c. 860, § 1, 49 Stat. 2026.)"

Its text and the reports of the congressional committee make it reasonably certain that the purpose of the act was to authorize service of civil and criminal processes of the state upon the premises, enabling persons residing thereon to serve on juries in the state courts, and to vote in elections held under the state law and to otherwise exercise the rights of citizens of the state. It was not the purpose that the state should have the right to exert police power there through application of municipal ordinances relating to licenses, bonds, and inspections in the course of construction thereon of buildings by the United States government, no such legislative intent or desire being indicated by the act.

The report of the House Ways and Means Committee (H.R. 2660) is in part as follows:

"The Housing Division of the Federal Emergency Administration of Public Works, pursuant to the provisions of Title II of the National Emergency Relief Act, the Emergency Appropriations Act of 1935, has constructed and is proposing to construct low-cost housing and slum-clearance projects in numerous cities through the United States. In order to execute this housing program effectively, amendatory legislation is necessary.

"Legal representatives of various municipalities interested in such projects have contended that, under the Constitution of the United States and the cession laws of the various states, the United States acquires exclusive jurisdiction over the property embraced in such projects whether or not such contention is sound, it is thought advisable to remove doubts and hesitancy arising because of such contentions, by waiving exclusive jurisdiction of the United States insofar as it may arise by reason of ownership by the United States of the sites of such projects. Otherwise, doubts as to the rights of tenants to vote, to send their children to local schools, and to exercise other civil rights under the local laws keep prospective tenants from taking advantage of such projects."

On October 3, 1936, the Director, Legal Division, Federal Emergency Administration of Public Works, Washington, D. C., transmitted to the Director of Housing a well-considered opinion in which analysis of the facts in the instant case is made and concludes with the following: "I am, therefore, of the opinion that the state or local government may not supervise the work of a contractor performing work on property owned by the United States of a contract with the United States."

The part of the opinion just quoted refers to the contract between the appellee (plaintiff) and the government for the construction of the improvements known as Project H-8101.

As was said in Six Cos., Inc. v. De Vinney, D.C., 2 F.Supp. 693, 697: "Statutes relinquishing jurisdiction are strictly construed. A controlling reason for such construction is that it is a matter of the very greatest importance to both the national and the state governments affected. Larson v. South Dakota, 278 U.S. 429, 49 S.Ct. 196, 73 L.Ed. 441."

 Any attempt on the part of the general government to cede to the state the former's jurisdiction over the property here in question should be closely and strictly construed and great care should be taken that only the exact legislative intent should be followed. The act in question was merely a recognition on the part of Congress that the state had retained certain control, as stated in section 10054, and that there was no attempt to recede complete and general jurisdiction. Such a contention is untenable in the light of 40 U.S.C.A. § 255, which requires: "No public money

shall be expended upon any site or land purchased by the United. States for the purposes of erecting thereon any * * * customhouse * * * or other public building of any kind whatever, * * * until the consent of the legislature of the State in which the land or site may be, to such purchase, has been given."

By section 10054, O.S.1931, 80 Okl.St. Ann. § 2, Oklahoma ceded to the general government "exclusive jurisdiction in and over any lands" acquired by the United States for one or more, of the purposes specifically named in section 10053, 80 Okl. St.Ann. § 1, supra, and, "for any other purposes for the government," but retained, however, by the language of section 10054 jurisdiction for "the service upon such sites of all civil and criminal process of the courts of this State," etc.

Compare Fort Leavenworth Railroad Co. v. Lowe, 114 U.S. 525, 5 S.Ct. 995, 29 L.Ed. 264; Ohio v. Thomas, supra, Ernest K. James et al. v. Dravo Contracting Company, 58 S.Ct. 208, 82 L.Ed. ——, decided by the Supreme Court of the United States on December 6, 1937, and Silas Mason Company, Inc., et al. v. Tax Commission of the State of Washington et al. (Ryan v. State of Washington et al.) 58 S.Ct. 233, 82 L.Ed. ——, decided by the Supreme Court of the United States on December 6, 1937.

The decree of the lower court should be, and is, affirmed.