## KEYES v. UNITED STATES.
### No. 7743.

United States Court of Appeals for the
District of Columbia.

Argued Jan. 9, 1941.

Decided March 10, 1941.

W. Gwynn Gardiner and James M. Earnest, both of Washington, D. C., for appellant.

Alexander H. Bell, Jr., of Washington, D. C., for appellees.

Before GRONER, Chief Justice, and MILLER and VINSON, Associate Justices.

GRONER, C. J.

This is an action begun by the Attorney General of the United States at the instance of the Alley Dwelling Authority to condemn certain real estate in the District of Columbia for the construction of dwellings for families and persons of low income. Appellant, the owner of two parcels within the area to be condemned, objected on a number of grounds. The trial court found her return to the rule insufficient as a matter of law, and granted the prayer of the petition, as a result of which appellant was required to surrender possession of her land.[1] We allowed a special appeal.

[1] D.C. Code, Tit. 25:

"100. Whenever the head of any executive department or independent bureau, or other officer of the United States, or any board or commission of the United States, hereinafter referred to as the acquiring authority, has been, or hereafter shall be, authorized by law to acquire real property in the District of Columbia for the construction of any public building or work, or for parks, parkways, public playgrounds, or any other public purpose, such acquiring authority shall be, and hereby is, authorized to acquire the same in the name of the United States by condemnation under judicial process whenever in the opinion of such acquiring authority it is necessary or advantageous so to do; and in every such case the Attorney General of the United States, upon the request of such acquiring authority, shall cause a proceeding in rem for such condemnation to be instituted in the Supreme Court of the District of Columbia, holding a special term as a district court of the United States, which court is hereby vested with jurisdiction of all such cases of condemnation with full power to hear and determine all issues of law and fact that may arise in the same."

"109. The petitioner may file in the cause, with the petition or at any time before judgment, a declaration of taking signed by the authority empowered by law to acquire the lands described in the petition, declaring that said lands are thereby taken for the use of the United States. Said declaration of taking shall contain or have annexed thereto—

"(1) A statement of the authority un-der which and the public use for which said lands are taken.

"(2) A description of the lands taken sufficient for the identification thereof.

"(3) A statement of the estate or interest in said lands taken for said public use.

"(4) A plan showing the lands taken.

"(5) A statement of the sum of money estimated by said acquiring authority to be just compensation for the land taken.

"Upon the filing of said declaration of taking and of the deposit in the registry of the court, to the use of the persons entitled thereto, of the amount of the estimated compensation stated in said declaration, title to the said lands in fee simple absolute, or such less estate or interest therein as is specified in said declaration, shall vest in the United States of America, and said lands shall be deemed to be condemned and taken for the use of the United States, and the right to just compensation for the same shall vest in the persons entitled thereto; and said compensation shall be ascertained and awarded in said proceeding and established by judgment therein, and the said judgment shall include, as part of the just compensation awarded, interest at the rate of 6 per centum per annum on the amount finally awarded as the value of the property as of the date of taking, from said date to the date of payment; but interest shall not be allowed on so much thereof as shall have been paid into the registry. No sum so paid into the registry shall be charged with commissions or poundage.

"Upon the application of the parties in interest, the court may order that the

In the argument here, appellant insists that her return contained meritorious defenses in the following respects: (1) The property cannot be condemned under the District of Columbia Alley Dwelling Act because it is neither in a square containing an inhabited alley nor necessary to provide accommodations for persons deprived of homes by the demolition of alley dwellings. (2) It cannot be condemned under any other housing laws because there is no showing either that it is unsanitary or unsafe or that the project includes the the demolition of a number of unsafe or unsanitary dwellings substantially equal to the dwellings to be constructed. (3) The legislative declaration on the unhealthfulness of alley dwellings upon which the validity of the law is said to depend, was based on a mistake or on facts which no longer exist. (4) The return contains denials which raise material issues of fact. (5) The Act is unconstitutional in that it authorizes the condemnation of private property for other than public uses.

We think there is no merit in these points.

In 1934 Congress enacted the "District of Columbia Alley Dwelling Act", 48 Stat. 930, for the purpose of abolishing all alley dwellings in the District by July 1, 1944. The power to acquire property by condemnation under this Act was limited to squares containing inhabited alleys. By executive order, the President appointed the members of the "Authority" to carry out the Act. The United States Housing Act of 1937, 50 Stat. 888, 42 U.S.C.A. § 1401 et seq., provided for subsidies and loans to local housing agencies, and in 1938 Congress amended the local act, partly to bring it in line with the national plan. 52 Stat. 1186. Title I of the amended act included the original provisions in revised form and authorized the acquisition not only of property in squares containing inhabited alleys but also of other property necessary to provide accommodations for

persons deprived of homes by the demolition of alley dwellings. Title II, added by the amendment, provided in § 202 that: "In addition to its other powers, the Authority shall have the power to acquire sites for and to prepare, carry out, acquire, lease, and operate housing projects, as defined in section 201 of this title, and to construct or provide for the construction, reconstruction, improvement, alteration, or repair of any such housing project, or any part thereof, in the District of Columbia."

Section 201 referred to defined housing project to mean "any low-rent housing (as defined in the United States Housing Act of 1937), the development or administration of which is assisted by the United States Housing Authority". Acting under this provision, the Authority addressed to the Attorney General a communication stating that it had received from the United States Housing Authority a loan of funds for the development of a low-rent housing project, that funds were available for the acquisition of the property required to be condemned, requesting the institution of proceedings to acquire by condemnation the property of appellant, and stating "This acquisition is for the public use and purpose of effectuating the declared policy of Congress by providing dwellings for families and persons of low income in the District of Columbia".

▌ We are of opinion that the quoted paragraph from Title II of the Act vested in the Authority power to condemn sites for low cost housing projects in addition to and wholly independent of the provisions of Title I of the Act to provide facilities to persons whose alley dwellings have been demolished. This view is fortified by the language of Section 203, which provides that the local Authority shall be an agency to carry out the purposes of the national housing Act, and the provisions of the national housing Act declare the policy of the United States to be to promote the general welfare by employ-

money deposited in the registry of the court, or any part thereof, be paid forthwith for or on account of the just compensation to be awarded in said proceeding. If the compensation finally awarded in respect of said lands or any parcel thereof shall exceed the amount of the money so received by any person entitled, the court shall enter judgment against the United States for the amount of the deficiency.

"Upon the filing of a declaration of taking, the court shall have power to fix the time within which and the terms upon which the parties in possession shall be required to surrender possession to the petitioner. The court shall have power to make such orders in respect of encumbrances, liens, rents, taxes, assessments, insurance, and other charges, if any, as shall be just and equitable."

ing government money to remedy the acute shortage of decent, safe, and sanitary dwellings for families of low income in rural or urban communities injurious to the health, safety, and morals of the Nation. In this view, appellant's argument that Title I of the Act does not authorize the taking of her property, because the taking has no relation to the demolition of alley dwellings, is wholly beside the case. The resolution to take the land was specifically stated to be under Title II. The request to the Attorney General was likewise based on the provisions under that title, and the petition for condemnation declared and set out those provisions as the authority under which the proceeding was begun. And in Title II there is no requirement, as appellant contends, that the property to be acquired must itself be unsafe or unsanitary or that it can only be acquired in connection with a project which includes the demolition of unsafe or unsanitary dwellings. Of course, the two parts of the Act are related, and the elimination of slums, in the interest of public health and morals, is an important and vital part of the general plan. In fact, the Housing Act of 1937 requires the demolition of an equivalent number of unsafe or unsanitary dwellings as a condition to the grant of the subsidies under sections 10 and 11. This case, however, does not involve any of these subsidies. The acquisition of the property is to be made with the proceeds of a loan granted by the United States Housing Authority under section 9 of the Act, which imposes no such condition. The power to acquire property for housing projects in the District is not confined as contended. Cf. Housing Authority of Dallas v. Higginbotham, 135 Tex. 158, 143 S.W.2d 79, 89, 90, 130 A.L.R. 1053; Allydonn Realty Corp. v. Holyoke Housing Authority, 304 Mass. 288, 23 N.E.2d 665, 668, 669; Chapman v. Huntington Housing Authority, W. Va., 3 S.E.2d 502, 513.

▇▇▇ Appellant's argument that she was entitled to show that alley dwellings are not, as declared, detrimental to public health and morals, comes too late in the history of this type of legislation, even if the point has, as we think it has not, any pertinence to a proceeding under Title II of the District Act. But even if it were otherwise, appellant's return sets forth only a conclusion that conditions with respect to the use of buildings in alleys as dwellings are not injurious to the public health, safety, morals, and public welfare. Something more is necessary to challenge the legislative declaration. The language of Justice Brandeis in Pacific States Co. v. White, 296 U.S. 176, 185, 56 S.Ct. 159, 163, 80 L.Ed. 138, 101 A.L.R. 853, is pertinent: "When * * * legislative action 'is called in question, if any state of facts reasonably can be conceived that would sustain it, there is a presumption of the existence of that state of facts, and one who assails the classification must carry the burden of showing by a resort to common knowledge, or other matters which may be judicially noticed, or to other legitimate proof, that the action is arbitrary.' Borden's Farm Products Co. v. Baldwin, 293 U.S. 194, 209, 55 S.Ct. 187, 192, 79 L.Ed. 281. The burden is not sustained by making allegations which are merely the general conclusions of law or fact. * * * Facts relied upon to rebut the presumption of constitutionality must be specifically set forth. * * * A motion to dismiss, like a demurrer, admits only facts well pleaded."

Appellant now contends that her answer raises material issues of fact on which she was denied the right to offer evidence. The argument is general and refers to no particular issue upon which evidence might be introduced or which might be determined in a manner to prevent the acquisition of her land. Upon examination of the record, we find that no substantial issue is raised. In the absence of more direct argument, we must assume that counsel does not seriously press the point.

Nothing more remains except to notice appellant's objection that the Act is unconstitutional in that it authorizes condemnation of property for other than public uses. Appellant relies on United States v. Certain Lands in City of Louisville, 6 Cir., 78 F.2d 684, 687, certiorari granted, 296 U.S. 567, 56 S.Ct. 154, 80 L.Ed. 400, dismissed, 297 U.S. 726, 56 S.Ct. 594, 80 L.Ed. 1009. The Circuit Court of Appeals there held that the Federal Government had no power to condemn lands in Kentucky for the construction of low rent housing. The court said: "Decisions dealing with condemnation proceedings are to be considered in the light of the powers possessed by the sovereign seeking to exercise the right. What is a public use under one sovereign may not be a public use under another. * * * The

state and federal governments are distinct sovereignties, each independent of the other and each restricted to its own sphere. * * * In the exercise of its police power a state may do those things which benefit the health, morals, and welfare of its people. The federal government has no such power within the states."

If we shall assume that this opinion correctly states the law with relation to an attempt by the United States to condemn property for housing purposes in one of the states (cf. Oklahoma City v. Sanders, 10 Cir., 94 F.2d 323, 115 A.L.R. 363), it has no relevancy to a proceeding begun by the United States in the District of Columbia, for in that District Congress has plenary legislative power—all the power that a state has within the territory of the state, and more (cf. Neild v. District of Columbia, 71 App.D.C. 306, 110 F.2d 246)—and there can be no doubt that a state legislature may validly provide for low rent housing projects and authorize the condemnation of land for that purpose. Beginning with the leading case of New York City Housing Authority v. Muller, 270 N.Y. 333, 1 N.E.2d 153, 105 A.L.R. 905, the power under similar statutes has been sustained in a long line of decisions. Housing Authority of Los Angeles v. Dockweiler, 14 Cal.2d 437, 94 P.2d 794; Marvin v. Housing Authority of Jacksonville, 133 Fla. 590, 183 So. 145; Williamson v. Housing Authority of Augusta, 186 Ga. 673, 199 S.E. 43; Krause v. Peoria Housing Authority, 370 Ill. 356, 19 N.E.2d 193; Edwards v. Housing Authority of Muncie, 215 Ind. 330, 19 N.E.2d 741; Spahn v. Stewart, 268 Ky. 97, 103 S.W.2d 651; State v. Housing Authority of New Orleans, 190 La. 710, 182 So. 725; Allydonn Realty Corp. v. Holyoke Housing Authority, Mass., supra; In re Brewster Street Housing Site in City of Detroit, 291 Mich. 313, 289 N.W. 493; Rutherford v. City of Great Falls, 107 Mont. 512, 86 P.2d 656; Lennox v. Housing Authority of Omaha, 137 Neb. 582, 290 N.W. 451, 291 N.W. 100; Romano v. Housing Authority of Newark, 123 N.J.L. 428, 10 A.2d 181, affirmed, 124 N.J.L. 452, 12 A.2d 384; Dornan v. Philadelphia Housing Authority, 331 Pa. 209, 200 A. 834; Knoxville Housing Authority v. Knoxville, 174 Tenn. 76, 123 S.W.2d 1085; Housing Authority of Dallas v. Higginbotham, Tex., supra.

On the whole case, we are of opinion that the action of the lower court was in all respects correct, and it is, therefore, affirmed.

Affirmed.