## CITY OF BIRMINGHAM v.
## THOMPSON et al.
### No. 13930.

United States Court of Appeals
Fifth Circuit.

Dec. 8, 1952.

Mayer U. Newfield, Asst. City Atty., Birmingham, Ala., for appellant.

Ralph B. Tate, John P. Ansley, Birmingham, Ala., for appellees.

Before BORAH, STRUM and RIVES, Circuit Judges.

RIVES, Circuit Judge.

Appellees were general contractors engaged in constructing a Veterans Hospital for the United States in Birmingham. On October 19, 1949, they paid to appellant City, under protest, $28,618.80 representing the amount demanded of them as building permit fee to secure a permit to construct the hospital. Contending that the exaction of the fee from them was illegal, they filed claim with appellant for its refund, and the claim not being paid, suit was brought for its recovery. The trial resulted in a judgment for appellees for the amount sued for plus interest. The building permit fee was imposed pursuant to appellant's Ordinance 700 F adopting a Building Code for the City of Birmingham.

The background facts as to the jurisdiction of the United States over the hospital site lands are these:

On March 24, 1947, the Board of Trustees of the University of Alabama by warranty deed conveyed an entire City block of land located in the City of Birmingham to the United States. Pursuant to Sections 18 and 19, Title 59, 1940 Code of Alabama, the Governor of the State on January 12, 1949, executed a patent ceding jurisdiction of said land to the Government, the deed reciting that the land was to be used in connection with a Veterans Administration Hospital. The patent deed, as required

by Section 19 of Title 59, supra, contained certain reservations, restrictions and conditions, including the following:

"* * * the State of Alabama expressly reserves the right to tax all persons, firms, corporations or associations now or hereafter residing or located upon said lands; to tax the exercise by any person, firm, corporation or association of any and all rights, privileges and franchises upon said land; and to tax property of all persons, firms, corporations or associations situated upon said land. The jurisdiction ceded is for the purposes of the cession, and none other, * * *."

The United States accepted jurisdiction as of January 12, 1949.

On October 4, 1949, appellees made a lump sum contract with the Government, through the Corps of Engineers, to construct a 500-bed Veterans Hospital on the land acquired from the University for $5,723,460.00.

The district court's findings of facts Nos. 3 and 4 contain a brief summary of Ordinance No. 700–F and of the controversy between appellant and appellees' leading up to the payment of the permit fees as follows:

"3. On July 26, 1949, the Commission of the City of Birmingham adopted Ordinance No. 700–F (The Building Code of the City of Birmingham, Alabama) and provided that it should become effective September 1, 1949. It is a comprehensive building code.[1] In adopting the Code the City Commission declared it to be 'remedial, and shall be (sic) constructed to secure the beneficial interests and purposes thereof—which are public safety, health, and general welfare—through structural strength, stability, sanitation, adequate light and ventilation, and safety to life and property from fire and other hazards incident to the construction and use of buildings.' Violations of the terms of the Code are made misdemeanors. The Building Official of the City is vested with authority to enforce the Code provisions.

"The Code provides in part that any owner, authorized agent or contractor who desires to construct a building shall first make application to the Building Official and obtain the required permit; the application for a permit shall be signed by the owner, or his authorized agent, on a form provided and the permit fee be paid at the time; the Building Official may require two or more copies of the building specifications be submitted to him and he is required to examine the application for a permit and the specifications to determine if they meet the requirements of the Code; no permit may be issued until the prescribed fees are paid; for a total valuation in excess of $100.00 a $1.50 fee for the issuance of the permit plus one-half (½) of one percent (1%) of the estimated valuation of the building is required; and failure to obtain a permit subjects any person commencing work on a building to the penalty prescribed.

"4. In October, 1949 plaintiffs started the construction of the hospital. A controversy developed between plaintiffs and defendant as to whether plaintiffs were required to obtain a permit to construct the Veterans Hospital and pay the permit fees prescribed in the building code. When plaintiffs failed

---

1. "The matters regulated by the Code include; Fire Districts; Classification of Buildings By Occupancy; Special Occupancy Requirements; Classification of Buildings by Construction; Fire Protection Requirements; Heating; Sprinklers and Standpipes; Fire Resistive Ratings for Materials and Construction; Exit Requirements; Minimum Design Loads; Foundations, Excavations, Floorings and Foundations; Masonry and Veneered Walls; Steel; Concrete; Wood Construction Practice, Design and Quality; Lathing and Plastering; Rat-Proof Construction; Light, Ventilation and Sanitation; Safeguards during Construction; Use of Public Property; Signs and Outdoor Displays; Elevators and Escalators; Prefabricated Construction."

to obtain the permit, defendant's Building Inspector's representative gave notice to plaintiffs to stop work until the permit was obtained. On October 19, 1949 plaintiffs paid defendant under protest $28,618.80 for the building permit and the permit was issued. The permit in part reads: 'Permission is granted to United States of America—Veterans Administration' to erect the hospital building 'to be approved under usual restrictions'. At the time of making payment plaintiffs advised defendant by letter that the payment was being made under protest in order to avoid interference with the necessary work of constructing the hospital and that they were preserving their right to recover the amount paid."

In its specification of errors, the appellant urges:

"1. The District Court erred in failing to sustain defendant's contention that the Government, not plaintiffs, was the real party in interest."

"2. The court below erred in concluding that plaintiffs could not be required to pay a permit fee under the building code of the City of Birmingham."

Under its contract, appellees were required by the Government to comply with sanitary regulations in force in the locality if a canteen were established on the building site. The Government also required appellees to comply "with any local or state laws or regulations governing the installation of any part of the work to be performed under the contract," and to "procure all necessary permits and licenses at his, or their, own expense."

While the United States Attorney notified the City that he had a claim against it "and in favor of the United States in the sum of $29,499.05" representing "erroneous payment of fees for building, plumbing and blasting permits" in connection with the building of the hospital, the Government claim was not pressed to suit. Colonel L. E. Mielenz, Chief of the Legal Division, Corps of Engineers, gave a written opinion stating in part: "Moreover, this is a lump-sum type of contract, and the bid included the license fee because you advised prospective bidders of the City ordinance requirements as interpreted by City officials. Under these circumstances it is clear that the United States has no direct interest in the matter which would support a suit in its own name, nor has it any contractual right to sue in the name of the contractor." The licenses and permits which appellees were required by the contract to obtain were referred to in the contract as "all required licenses and permits" and in the specifications as "all necessary permits and licenses." Appellees paid the permit fees to appellant. and they are the real parties in interest to recover such fees if they were illegally required, or not legally necessary.

Whether appellees could legally be required to pay the permit fees involves an issue of jurisdiction. Article 1, Sec. 8, Clause 17 of the United States Constitution confers on Congress the power to exercise exclusive legislation over all places purchased by the consent of a state legislature for the erection by the United States of needful buildings. That power may be qualified in accordance with agreements reached by the respective governments. James Stewart & Co. v. Sadrakula, 309 U.S. 94, 60 S.Ct. 431, 84 L.Ed. 596. The act of cession contained in the patent issued by the Governor of Alabama conferred "exclusive jurisdiction" over the hospital site lands to the United States subject to the terms of Sections 1, 18 and 19, Title 59, 1940 Code of Alabama. This "exclusive jurisdiction" subject to such terms was accepted by the United States in accordance with the provisions of 40 U.S.C.A. § 255. The state reserved the right to tax all persons, firms, corporations or associations now or hereafter residing or located upon such lands and the right to tax the exercise by any person, firm, corporation or association of any and all rights, privileges and franchises upon said lands and to tax property of all persons, firms, corporations or associations situated upon such lands. In the light of the several pertinent deci-

sions of the Supreme Court [2] appellant urges that there is no basis for contending that the appellant City is debarred from requiring the appellees to pay for the privilege of conducting their work.

Appellant further urges with much force that the construction of the hospital required many acts extending beyond the territorial site of the hospital lands. Appellees were bound by their contract with the Government to perform all work specified, "complete with outside utilities, site improvements and all other appurtenant facilities." Appellant City designed and constructed for the use of the hospital a sanitary sewer at a cost of $548.60 and a storm sewer at a cost of $2,133.75. The City Building Code Ordinance under consideration contained a provision permitting the use for construction or demolition purposes of one-third of the width of the streets adjacent to the building being erected "and for which a permit has been issued." The findings of fact by the District Court were amended to include the following:

"Plaintiffs since October 1949 have been and are now occupying approximately 50,000 square feet of public streets and sidewalks surrounding and immediately contiguous to the square block of land ceded to the United States. This encroachment into the public street amounts to $\frac{1}{3}$ of the street along 3 sides of the Government's property. A high wooden fence encloses the area from which the public is thus excluded, except that a walkway surrounding the barricaded area has been erected by plaintiffs. Use of said 50,000 square feet of public property is of substantial benefit to the Contractor in conducting his building operations."

Additional evidence was introduced tending to show that the appellant City was further burdened by the construction of the hospital in the performance of its duties of fire protection and of the regulation of traffic on the public streets.

Entirely different problems would be faced by the court if the ordinance under consideration merely required the payment of business licenses by the contractors or the payment of compensation for the privilege of using substantial portions of the public streets of the City while engaged in the construction work or for other benefits afforded by the City. This is not such an ordinance. Appellant's Building Code requires any owner, authorized agent, or contractor who wishes to construct a building to "first" make application to the Building Official and obtain the required permit; application for a permit with the required fee shall be filed on a form furnished by the City, shall contain a general description of the proposed work and its location and be signed by the owner or his authorized agent; the Building Official is given authority to require that two or more copies of the building specifications be submitted to him; he shall require a plot diagram and may require a boundary line survey; he is required to examine the application for a permit and the specifications to determine if they meet the requirements of the building code and all other pertinent laws and ordinances; if he is satisfied that the application and specifications conform to the requirements of the code and other laws and ordinances, he shall issue a permit, but if not so satisfied, he shall refuse to issue a permit; if he issues a permit he shall endorse on both sets of plans "approved" and one set so approved shall be kept at the site of work and shall be open to inspection by the Building Official; he may require architect or engineer supervision to see that the Code provisions are complied with; "no permit shall be issued until the fees prescribed in this section shall have been paid"; "If any person commences any work on a building or structure before obtaining the necessary permit from the City, he shall be subject to the penalty prescrib-

2. James v. Dravo Contracting Co., 302 U. S. 134, 58 S.Ct. 208, 82 L.Ed. 155; Silas Mason Co. v. Tax Commission, 302 U.S. 186, 58 S.Ct. 233, 82 L.Ed. 187; State of Alabama v. King & Boozer, 314 U. S. 1, 62 S.Ct. 43, 86 L.Ed. 3; Curry v. United States, 314 U.S. 14, 62 S.Ct. 48, 86 L.Ed. 9.

ed herein"; "Any person desiring a building permit * * * at the time of filing an application therefor as provided in Section 105 shall pay to the City of Birmingham a fee as required in the following schedule:"; the building official shall make inspections as work progresses and a final inspection shall be made prior to the issuance of a Certificate of Occupancy; work requiring a permit shall not be commenced until the permit holder shall have posted the building permit card in a conspicuous place on the front of the building; no work shall be done on any part of a building beyond the point indicated in each successive inspection without first obtaining the written approval of the building official; no new building shall be occupied until after the Building Official shall issue a Certificate of Occupancy; and "Any person, firm, corporation or agent who shall violate a provision of this code or fail to comply therewith * * * shall be guilty of a misdemeanor."

What was said by the Supreme Court in Collins v. Yosemite Park & Curry Co., 304 U.S. 518, 533, 58 S.Ct. 1009, 1016, 82 L.Ed. 1502, is applicable here: "This is not a case where provisions requiring a license may be treated as separable from regulations applicable to those licensed. Here the regulatory provisions appear in the form of conditions to be satisfied before a license may be granted."

The State of Alabama did not reserve the right to regulate the construction of buildings on the hospital site lands. A fortiori no such right is vested in the appellant City. See Oklahoma City v. Sanders, 10 Cir., 94 F.2d 323, 115 A.L.R. 363. The question is one of jurisdiction since enforcement of the ordinance involves a permit for and control of the construction of the building on Government lands, matters beyond the jurisdiction of the appellant City. It is not saved by the fact that a proper ordinance could have required payment of a business license fee or of compensation for the substantial benefits furnished by the City. The judgment of the District Court is affirmed.

Affirmed.