**Kambhatla RAMACHANDAR, Plaintiff,**

v.

**Thomas SOBOL, Commissioner of the New York State Department of Education, Defendant.**

**No. 91 Civ. 1405 (MJL).**

United States District Court, S.D. New York.

Oct. 15, 1993.

Mental Disability Law Clinic, Huntington, NY by William M. Brooks, for plaintiff.

Attorney General's Office, Robert Abrams, Atty. Gen. State of N.Y., New York City by Barbara K. Hathaway, for defendant.

## OPINION AND ORDER

LOWE, District Judge.

Before this court are plaintiff's and defendant's cross-motions for summary judgment under Fed.R.Civ.P. 56, filed on February 13, 1992 and February 21, 1992, respectively. For the reasons stated below, plaintiff's motion is denied and defendant's motion is granted.

## BACKGROUND

The present motions were referred to Magistrate Judge Barbara A. Lee by Order of Reference dated June 3, 1992. Magistrate Judge Lee issued a Report and Recommendation ("R & R") on February 10, 1993. Plaintiff filed an objection to the R & R pursuant to 28 U.S.C. § 636(b)(1) on March 22, 1993.

The R & R's detailed account of the facts is adopted for purposes of this Opinion and Order. Only the essential facts are recited here. Plaintiff obtained a license to practice medicine in the State of New York in 1972, but since 1977 has suffered from mental illness. In 1985, the New York State Board for Professional Medical Conduct ("Board") charged plaintiff with professional misconduct for practicing while his ability was impaired by mental illness.[1]

A hearing committee of the Board held hearings in February and March of 1986, and in May 1986 recommended revocation of plaintiff's license. A review committee, however, recommended remand because plaintiff's counsel had withdrawn during the hearings without replacement. The Board agreed with the review committee and remanded for additional hearings, which were held from October to December of 1989. The hearing committee in April 1990 again

---

**1.** Professional misconduct is defined as "[p]racticing the profession while the ability to practice is impaired by alcohol, drugs, physical disability, or mental disability." N.Y.Educ.L. § 6509 (McKinney 1985).

recommended revocation, and the Commissioner of Health joined the hearing committee's recommendation. The review committee, however, significantly departed from the hearing committee's recommendations. The review committee agreed that plaintiff was guilty of misconduct, but grounded that finding on just one of five charges: that "[d]uring June, 1985, [plaintiff] practiced medicine as a staff physician employed by the Newark Developmental Disabilities Service Office while his ability to practice was impaired by mental illness." Brooks Aff.Ex. D, ¶6 (Statement of Charges).

The facts underlying that charge were described by the review committee as follows:

[E]arly in June 1985 respondent could not function, his voice slurred, and answers were not appropriate to questions. He was employed at the Newark Developmental Center until he left on June 19, 1985. Respondent's mental illness [had] progressed from the period of January 2, 1985, when he appeared to be extremely confused, insecure and not functioning up to his capacity; to April 10, 1985 until April 30, 1985, when he was having a problem and agreed to see the consultant psychiatrist; and to May 1985, when he became worse, mumbled in response to a question, and gave information that was completely devoid of the question.

The record also shows that [plaintiff's] physician supervisor observed [plaintiff's] work performance to be starting to deteriorate before the first part of May 1985. At a meeting at that time, [plaintiff] would have a tendency to talk in short bursts, and then go off on a tangent completely on some other subject. The supervisor felt [plaintiff] was getting irritable over an extended period of time and was losing his confidence. By May 1985, [plaintiff] was not functioning the way he should have been. Nevertheless, he refused to be hospitalized.

By the first week of June 1985, [plaintiff] could not function, and at that time denied that he had a problem. In June 1985, [plaintiff] felt he did not need the psychiatric care which he was recommended to receive. During the first week

of June 1985, [plaintiff] was still seeing patients. At that time, while [plaintiff] was practicing, [plaintiff] was mumbling, repetitive, withdrawn, and seemingly fearful. In late May and early June 1985, [plaintiff's] prior personal hygiene problem recurred and his patient records showed his own insecurity or were sometimes not understandable. In June 1985, [plaintiff's] supervisor observed that [plaintiff] was "incapable," due to slurring, hesitancy with answers, and not appropriate responses which were not even remotely connected to the discussion.

Brooks Aff.Ex. A at 15–16 (review committee report) (citations omitted). The review committee found plaintiff guilty of practicing while mentally impaired:

We reject [plaintiff's] contention that there is no sufficient proof that [plaintiff] actually practiced medicine while impaired. [Plaintiff] is guilty not merely because he has a serious mental illness. Based on all of [defendant's] proof, we find that [plaintiff] was, as charged in the fifth specification, practicing medicine during June 1985. Accordingly, we conclude, by a preponderance of the evidence, that [plaintiff] is guilty of the fifth specification in light of his conduct of practicing the profession as a staff physician employed by the Newark Developmental Center while his ability to practice was impaired by mental disability.

Brooks Aff.Ex. A at 16–17.

The review committee concluded that

[i]n order to adequately protect the public, [plaintiff's] license to practice as a physician in the State of New York should be revoked. We have considered all the mitigating and aggravating circumstances and find, in agreement with the hearing committee, that revocation is appropriate. We note that [plaintiff's] contention that his license cannot be revoked under the Federal Rehabilitation Act and the State Human Rights Law is without merit. The Board of Regents has discretion to impose an appropriate measure of discipline. Under these circumstances, the Board of Regents is not required by law to allow respondent to practice under monitoring and supervision.

Brooks Aff.Ex. A, at 18–19 (citations omitted). The Board adopted the review committee's recommendation, and plaintiff's license was revoked by order of the defendant on October 26, 1990. Brooks Aff.Ex. B.

Plaintiff filed this action on February 26, 1991, claiming that the revocation violated Section 504 of the Rehabilitation Act of 1973 ("the Act"), 29 U.S.C. § 794(a). Plaintiff alleges that the revocation was ordered "as a measure to protect the public safety and not as a means of punishment for engaging in culpable conduct." Compl. ¶ 27. Plaintiff alleges that his condition can be controlled, and submits that the Act required the Board to determine whether plaintiff was "otherwise qualified"—i.e., whether assurance that his condition was under control could have been maintained with reasonable accommodation. Plaintiff asks this Court to direct defendant to reconsider the matter and address whether reasonable accommodation is possible.

## DISCUSSION

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Ambiguities must be resolved against the movant. *Lopez v. S.B. Thomas, Inc.*, 831 F.2d 1184, 1187 (2d Cir. 1987) (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 993, 8 L.Ed.2d 176 (1962)). Summary judgment is granted "only where the entire record would inevitably lead a rational trier of fact to find for the moving party." *National R.R. Passenger Corp. v. City of New York*, 882 F.2d 710, 713 (2d Cir.1989). Summary judgment is not granted where "sufficient evidence supporting the claimed factual dispute [is] shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (quoting *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 288–289, 88 S.Ct. 1575, 1592, 20 L.Ed.2d 569 (1968)).

### A. Section 504(a)

■ Section 504(a) of the Act states in pertinent part:

No otherwise qualified individual with a disability in the United States shall, solely by reason of her or his disability be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.

29 U.S.C.A. § 794(a). Handicap status alone is an impermissible ground for assuming a person's inability to function in a particular context. *Southeastern Community College v. Davis*, 442 U.S. 397, 405, 99 S.Ct. 2361, 2366, 60 L.Ed.2d 980 (1979). By enacting § 504(a), Congress wished to "protect the handicapped against discrimination stemming not only from simple prejudice, but also from 'archaic attitudes and laws' and from 'the fact that the American people are simply unfamiliar with and insensitive to the difficulties confront[ing] individuals with handicaps.'" *School Bd. v. Arline*, 480 U.S. 273, 279, 107 S.Ct. 1123, 1126, 94 L.Ed.2d 307 (1987) (quoting S.Rep. No. 1297, 93rd Cong., 2d Sess. 50 (1974)).

The Second Circuit has clearly defined the requirements for a prima facie case under the Act.

To establish a prima facie violation of § 504, a plaintiff must prove: (1) he is a "handicapped person" under the Rehabilitation Act; (2) he is "otherwise qualified" for the program; (3) he is excluded from benefits solely because of his handicap; and (4) the program or special service receives federal funding.

*Mrs. C. v. Wheaton*, 916 F.2d 69, 74 (2nd Cir.1990).

### B. Prima Facie Case

Magistrate Judge Lee found no dispute that plaintiff is a "handicapped person" and that the Department of Education of the State of New York is a "program or activity receiving Federal financial assistance" as those terms are defined in the Act. R & R

at 12. Defendant has not objected to those findings.

Magistrate Judge Lee found that plaintiff's license was not revoked "solely by reason of" his handicap, and that plaintiff was not "otherwise qualified" at the time of the revocation. Plaintiff objects to both of those recommended findings.

### 1. "Solely By Reason Of"

■ Magistrate Judge Lee found no genuine issue of fact that would preclude a finding that the revocation of plaintiff's license was not solely by reason of his handicap. According to the R & R, the review committee

> expressly based the revocation on the narrow statutory ground of practicing the profession while impaired. Plaintiff has never controverted the evidence that, during the period at issue in 1985, he refused treatment and denied that he had a problem.... In other words, the professional misconduct for which plaintiff was disciplined was not his handicap, but his conduct in refusing treatment for it.

R & R at 14.

Plaintiff objects that Magistrate Judge Lee failed to recognize that the Committee revoked plaintiff's license "not because of conduct ... but because the Committee was concerned about the plaintiff's mental. illness." Pl.'s Obj. at 2. Defendant maintains that "[p]laintiff was found guilty of professional misconduct based on his conduct, not his mental status." Def.'s Mem. in Opp'n to Pl.'s Obj. at 3.

The R & R does not mention any precedents addressing the "solely by reason of" element. This Court finds it instructive to consider *Teahan v. Metro–North Commuter R.R. Co.*, 951 F.2d 511 (2d Cir.1991), *cert. denied*, — U.S. —, 113 S.Ct. 54, 121 L.Ed.2d 24 (1992), in which the Second Circuit held that a decision is made solely by reason of a handicap if the decision is based *either* on the handicap itself *or* on conduct resulting from the handicap. *Id.* at 515–17. "[A]n employer 'relies' on a handicap when it justifies termination based on conduct caused by the handicap. An employer does *not* 'rely' on a handicap when it can point to

behavior that is not causally related to that handicap." *Id.* at 516.

The review committee in the present case reached its conclusion explicitly because of plaintiff's "conduct of practicing the profession as a staff physician employed by the Newark Developmental Center while his ability to practice was impaired by mental disability." Brooks Aff. A at 17. The Court finds no genuine issue whether plaintiff's conduct was caused by his handicap: it was. The review committee's reliance on plaintiff's practicing while impaired is inseparable from reliance on plaintiff's handicap. *Teahan* stands for the proposition that, when determining whether a decision is made "solely by reason of a handicap", there is no distinction between a decision based on the handicap, itself, and one based on conduct that results from it.

No genuine issue of material fact exists concerning the review committee's reliance on conduct caused by plaintiff's handicap. The Court finds that plaintiff's license was revoked solely by reason of his handicap.

### 2. "Otherwise Qualified"

#### a. The R & R

■ Magistrate Judge Lee found no genuine issue of fact that would preclude a finding that plaintiff was not otherwise qualified at the time of the revocation. The recommended finding is based on the observation that "[t]he complaint is silent on whether plaintiff was 'otherwise qualified' to practice medicine at the time of the revocation of his license." R & R at 13. The complaint states only that plaintiff "*[p]resently* ... suffers from mental illness ... which is *presently* in remission," and that he "*[p]resently* ... possesses the ability to safely practice medicine if reasonable accommodations are made to account for the illness." Compl. ¶¶ 28, 29 (emphasis added). *See also* Pl.'s R. 3(g) Counterstatement ¶ 12 (admitting defendant's characterization of plaintiff's mental illness but claiming that it "is not a characterization of his *present* mental status.") (emphasis added). Magistrate Judge Lee recommends granting summary judgment to defendant, because "[p]laintiff's 'present mental

status' ... has no bearing on whether there was a violation of the [Act] in 1990 ... or [at] any earlier time." R & R at 13.

. The R & R explains that "[t]o meet his burden of showing that he is 'otherwise qualified,' plaintiff must show 'either (a) the lack of any need for accommodation, or (b) the possibility of reasonable accommodation.'" R & R at 11 (quoting *Gilbert v. Frank,* 949 F.2d 637, 642 (2nd Cir.1991)). The Supreme Court has instructed that "[a]ccommodation is not reasonable if it either imposes 'undue financial and administrative burdens' on a grantee, or requires 'a fundamental alteration in the nature of the program.'" *Arline,* 480 U.S. at 287 n. 17, 107 S.Ct. at 1131 n. 17 (quoting *Southeastern Community College v. Davis,* 442 U.S. 397, 410, 412, 99 S.Ct. 2361, 2369, 2370, 60 L.Ed.2d 980 (1979)).

■ The Court agrees that it is insufficient for plaintiff to claim that he is now otherwise qualified and reasonably accommodable; he must claim that he was otherwise qualified and reasonably accommodable at the time of the alleged discrimination. Plaintiff acknowledges that Magistrate Judge Lee's characterization of the complaint is . correct but plaintiff, nevertheless, objects to the R & R because "genuine issues of material fact exist as to whether or not the plaintiff was 'otherwise qualified.'" Mem. in Supp. of Obj. at 2–3. Plaintiff thus bases his objections on his assertions now, as a factual matter and without regard for the content of his complaint, that he *was* otherwise qualified and reasonably accommodable at the time of the alleged discrimination. Plaintiff supports this assertion with references to portions of the remand hearings in which witnesses testified to his prospects for safe practice of medicine. But transcripts of the proceeding before the hearing committee cannot remedy deficiencies in the complaint. The complaint fails to state a claim upon which relief can be granted, and defendant is entitled to summary judgment dismissing the complaint. Magistrate Judge Lee's R & R on the "otherwise qualified" issue is adopted.

b. Additional Grounds

■ Defendant would be entitled to summary judgment even if the complaint were

not defective. Plaintiff has failed to demonstrate a genuine issue of material fact concerning whether he was otherwise qualified to practice medicine at the time of the revocation proceeding. Plaintiff cites the following revocation hearing testimony in support of his late assertion that he was otherwise qualified:

Q What sort of monitoring and conditions on his treatment and his practice of medicine do you believe would be appropriate to insure that [plaintiff] does not have problems in the future of the sort that he had experienced many years ago?

\* \* \* \* \* \*

A I would recommend that he continue the medications and psychiatric counseling and psychotherapy, and work in a structured institution ... rather than going into a solo practice.

Q Do you believe that a research related position might be appropriate for [plaintiff]?

\* \* \* \* \* \*

A I agree with that because of seeing his past experience with the research and the amount of enjoyment he did get, and the amount of disappointment he experienced in solo practice, I would consciously make a recommendation to him he should pursue what gives him happiness, and that happiness would keep his mental symptoms under control, in addition to the lithium as needed.

Q Assuming that conditions were, again, imposed upon [plaintiff] and monitoring that would insure that he did continue to participate in psychotherapy and to take lithium and maintain appropriate blood levels of lithium as you've indicated, what do you believe the prospects are for his returning to the practice of medicine?

A I think, given those conditions, it should be good.

Brooks Aff.Ex. C at 477–79 (testimony of Dr. Upadahya).

Q In this proceeding, considering whether to take some action against [plaintiff's] license, one of the options open to the panel would be to restore his license,

but impose conditions, conditions which might include the monitoring of him and include him remaining in therapy, and which may also include restrictions on the practice in which he may engage, including supervised settings.

Assuming those conditions were imposed upon [plaintiff], what is your view of his ability to practice successfully?

A ....

... I think that in this case, the illness that he has is eminently treatable; not curable, but treatable. It's a condition which many people in his field do have and are treated for, and maintain their roles in society.

I think we do recognize that there are certain things that work—and we have to surmise that these, in fact, are the things that are working, and we would have to start off with those assumptions so strong that they would be incorporated into recommendations.

One, is that he is to remain on lithium. Two, the lithium seems to be provided in the context of an ongoing caring relationship with a psychiatrist [Dr. Upadahya] who seems to have been able to establish a very good and committed relationship.

Three, while [plaintiff] does get better in the hospital, and presumably, in part, because of medication, one could also consider that it's also because it's a structured environment, and he's able to pull together when there's structure, when there's order, when there's a schedule, when there's supervision. And so that kind of supervision and a structured work life would certainly be an initial condition for his performance, and a review, periodically, to see how that is proceeding.

Within that context, certainly, his judgment would be something we would all want to be concerned with and take all safeguards, but I think his clinical judgment, with lithium consistently being taken, and blood levels being monitored, is as—is likely to be as good as it ever was.

Brooks Aff.Ex. C at 635 (testimony of Dr. Feiner).

Plaintiff contends that the possibility of reasonable accommodation, supported by this testimony, was not considered by the licensing authorities. Plaintiff's contention is incorrect: The testimony was given before the hearing committee and considered by the review committee. Brooks Aff.Ex. A at 7. Both committees concluded that revocation was necessary. Indeed, the review committee specifically considered the accommodations—monitoring and supervision—that plaintiff alleges are reasonable and were not considered. The review committee report states: "The Board of Regents has discretion to impose an appropriate measure of discipline. Under these circumstances, the Board of Regents is not required by [the Act or the State Human Rights Law] to allow respondent to practice under monitoring and supervision." Brooks Aff.Ex. A at 19.

Plaintiff asks the Court to disregard this statement because the review committee did not refer specifically to whether plaintiff was "otherwise qualified" or whether plaintiff could be "reasonably accommodated." But § 504 requires reasonable accommodation, not formulaic incantations. The Court finds that the defendant effectively considered and rejected the possibility of reasonable accommodation.

■ Plaintiff also seems to suggest that the review committee's statement shows that it thought the Act's accommodation requirement inapplicable to the administrative disciplinary proceeding. Reply Mem. in Supp. of Pl.'s Mot. for Summ.J. at 11 ("[T]he Regents Review Committee rejected the plaintiff's argument that section 504 and the New York State Human Rights Law governed the administrative proceedings after it found numerous facts and imposed its penalty, namely, revocation of the plaintiff's license."). If plaintiff means that the review committee treated § 504 as inapplicable to disciplinary proceedings, then plaintiff's suggestion is inconsistent with his position that the revocation was designed to protect the public and not to discipline plaintiff. Compl. ¶ 27. But more important, the Court does not agree that the review committee treated § 504 as inapplicable to all revocation proceedings. The review committee did not state that the

Act never requires it to consider whether reasonable accommodation is possible; rather, the review committee stated that the Act did not require it to allow *this* plaintiff to practice under monitoring and supervision. The Court judges the review committee by its words, and those words reflect a judgment about whether this plaintiff should be allowed in this case to practice under conditions that this plaintiff proposed during his hearings.

The evidence plaintiff now offers to show that he could have been reasonably accommodated was considered and rejected by the licensing authority. That fact in itself is sufficient to dispose of plaintiff's case, which rests on the assertion that plaintiff's ability to practice with reasonable accommodation was not considered, and which seeks only an injunction compelling consideration of the issue.

■ The review committee's consideration of the issue establishes a further ground for summary judgment. The licensing authority is entitled to deference in assessing the risks posed by plaintiff. *See Arline,* 480 U.S. at 288, 107 S.Ct. at 1131 (stating that "courts normally should defer to the reasonable medical judgments of public health officials" when assessing the risks posed by an employee handicapped with contagious disease); *Doe v. Region 13 Mental Health–Mental Retardation Comm'n,* 704 F.2d 1402, 1412 (5th Cir.1983) (applying "substantial justification" standard of deference to doctor's decision that mentally handicapped associate was not otherwise qualified). Whether those risks can reasonably be borne with possible accommodations is an issue of fact to be determined in court. *Arline,* 480 U.S. at 288, 107 S.Ct. at 1131. But on this point, too, the judgment of a professional licensing authority is entitled to weight. The standard of decision-making

thus is a hybrid, aptly described by the Court of Appeals for the Fifth Circuit as " 'meta-reasonableness'; that is, to validate reasonable restrictions; *and* to give 'reasonable deference' to the grantee's *own* determination of [a] restriction's reasonableness." *Brennan v. Stewart,* 834 F.2d 1248, 1261 (5th Cir.1988).[2] Reasonable deference is *especially* warranted where, as here, the grantee is not an employer but a disinterested professional licensing authority.

■ The nature of the present motion—summary judgment—complicates matters slightly. To grant summary judgment to defendant, the Court cannot just give reasonable deference to defendant's opinion that accommodation would not be reasonable. Rather, the Court must decide that a reasonable factfinder, giving reasonable deference to defendant's decision, could not conclude that plaintiff could be reasonably accommodated. The Court finds that standard met in this case.

■ Plaintiff's only evidence that reasonable accommodation was possible is the testimony that he could safely practice if he were supervised, his blood lithium level were monitored, and his continued relationship with psychiatrist Upadahya were ensured. The Court is uncertain whether a reasonable factfinder could conclude that these would be reasonable burdens to place on a medical employer, and not "undue ... administrative burdens," *Davis,* 442 U.S. at 412, 99 S.Ct. at 2370, or "fundamental alteration[s] in the nature of" medical practice. *Davis,* 442 U.S. at 410, 99 S.Ct. at 2369. But the Court's uncertainty is dispelled once reasonable deference is accorded the licensing authority. The review committee found monitoring and supervision inconsistent with the "appropriate measure of discipline," Brooks Aff.Ex. A at 19, and the Court finds no grounds on which a reasonable factfinder, according rea-

2. *Brennan* eventually concluded that the relevance of the grantee's determination was lessened by the Supreme Court's decision in *Alexander v. Choate,* 469 U.S. 287, 105 S.Ct. 712, 83 L.Ed.2d 661 (1985), which held that disparate impact might alone support a § 504 claim. But the *Alexander* decision, which was relevant to the generally applicable eyesight requirements at issue in *Brennan,* has no bearing on the individual-

ized determination on the present plaintiff's fitness to practice medicine and the possibility of accommodating his practice with penalties short of revocation. Thus the Court finds that the "meta-reasonableness" standard remains appropriate in cases that, like this one, involve individualized determinations rather than general prerequisites.

sonable deference to the licensing authority, could disagree.

 This is particularly true because a factfinder would be confronted with evidence of the seriousness of plaintiff's illness at the time of the hearings, and the judgment of the committee members that his prospects were at best questionable:

> [H]is answers were rambling in places and evidenced a lack of appreciation or insight for the seriousness of his illness. He denied that he was ever incapacitated for the practice of medicine because of mental problems. He has apparently still not accepted the fact that his very serious psychiatric disorder has resulted in his hospitalizations but rather attributes it to his lack of money during periods of unemployment. He could not explain why he was hospitalized for psychiatric care after going for cellulitis treatment. He thinks about 75–80 per cent of his hospitalizations were without psychiatric indication. He denied that his past interest in Olivia Newton John was unusual or correlated with periods of active illness. Respondent's continued difficulty in accepting the fact of his serious psychiatric episodes puts him at risk for non-compliance with his treatment and decompensation.

Brooks Aff.Ex. E at 6–7. The Act does not require professional licensing authorities, against their best judgment, to play Russian roulette with public health. Reasonable accommodation, in the context of permitting a physician to practice medicine, necessarily is accommodation that eliminates significant risk to patients. *See Kohl v. Woodhaven Learning Ctr.*, 865 F.2d 930, 941 (8th Cir.) ("Enforcement of section 504 cannot entail exposing third parties to significant risks."), *cert. denied*, 493 U.S. 892, 110 S.Ct. 239, 107 L.Ed.2d 189 (1989). The hearing committee found risk of non-compliance with treatment, and obviously believed that the risk was significant (the committee concluded that plaintiff's license should be revoked).

No reasonable factfinder according reasonable deference to the licensing authority could conclude that plaintiff was reasonably accommodable at the time of the revocation proceeding.[3] Summary judgment for defendant is appropriate.

### CONCLUSION

Plaintiff's motion for summary judgment is denied.

Defendant's motion to dismiss and for summary judgment is granted.

It Is So Ordered.

---

**3.** Magistrate Judge Lee suggested, and this Court agrees, that the present determination does not address the rights that plaintiff would have under § 504 if he were to seek reinstatement and demonstrate his present well-being. R & R at 13 n. 26.