Dear Elizabeth F. Harris
You have requested our opinion on three questions that arise from the federal government's implementation of the base realignment and closure ("BRAC") process in Maryland. That process is expected to result in significant development at certain military bases in the State, including Fort Meade and Aberdeen Proving Ground. First, you ask whether real property located within an area of exclusive federal jurisdiction on a military installation, but leased to and developed by a private entity, will be subject to Maryland property taxes. Second, you pose the same question as to real property within an enclave of exclusive federal jurisdiction, but not on a military installation. Finally, you ask whether, in either context, impact fees may be assessed against the private developer to offset the enhanced costs for schools, transportation, and other public infrastructure.
Property within an enclave of exclusive federal jurisdiction would not normally be subject to the taxing jurisdiction of a state. However, the federal government can waive its immunity from local taxation and, therefore, the answers to your questions depend on whether the federal government has waived its immunity from local taxation with respect to the property interests created under the leases, and the extent of any such waiver. The same analysis applies whether the area of exclusive federal jurisdiction is located on a military installation or located elsewhere, although some waivers may apply only on military installations. In order to determine whether the federal government has made such a waiver, and the extent of any waiver, one ordinarily looks to the law that authorizes the lease of federal property. If federal immunity has been waived, Maryland law then determines whether the property interest is subject to a tax or is exempt from that tax. *Page 13 
With respect to impact fees, it is first necessary to determine whether the particular impact fee is properly categorized as a tax or a regulatory fee. If it is a tax, the question then is whether the federal government has waived immunity for that type of tax. If it is a regulatory fee, the question is whether the regulatory regime involving the fee existed and remained applicable as federal law at the time that the State ceded jurisdiction over the property to the federal government or, if the State regulatory regime was a later enactment, whether Congress has expressly subjected the enclave to that type of state regulation.
For example, we understand that land at Aberdeen Proving Ground was recently leased to a private developer pursuant to 10 U.S.C. § 2667, which authorizes Enhanced Use Leases ("EULs") of land on military bases. That statute specifically waives the federal immunity from local property taxation for the private interests in real property created under an EUL. Accordingly, those private interests are subject to State and local taxation, unless Maryland law otherwise exempts the property. However, in our view, the federal statute does not waive federal immunity with respect to an impact fee that would be considered a tax. Nor does it appear that local impact fees existed at the time the State ceded jurisdiction of this land to the federal government.
 I Background
A. Taxation of Property Interests in Exclusive Federal Enclaves
When the federal government acquires real property in a state, federal jurisdiction over that property can range from exclusive jurisdiction to various levels of concurrent jurisdiction shared with the state to simple ownership.[1] The determination of the extent of federal jurisdiction depends in part on the extent to which a state has ceded jurisdiction to the federal government. See Annotated Code of Maryland, State Government Article ("SG") § 14-101 (ceding jurisdiction over land needed by the federal government); see also 63 Opinions of the AttorneyGeneral 332 (1978); 61 Opinions of the *Page 14 Attorney General 441 (1976). The federal government retains exclusive jurisdiction even if it allows private parties to operate within the enclave. Humble Pipe Line Co. v. W.E. Waggonner, 376 U.S. 369,372-73 (1964).
The federal government is exempt from state and local taxation; moreover, none of the property in an enclave of exclusive federal jurisdiction would normally be subject to the taxing jurisdiction of the state. OffuttHousing Co. v. County ofSarpy, 351 U.S. 253, 256-57 (1956). While this exemption extends to private property located in an area of exclusive federal jurisdiction, Congress may allow such interests to be subject to local taxation. Id.
B. BRAC
The BRAC process is intended to increase the efficiency of the military services, by periodically closing redundant facilities and consolidating operations within a reduced number of military bases.See United States Department of Defense, Base Realignment and Closure, Frequently Asked Questions, www.defenselink.mil/ The current process is expected to result in a significant increase in population and operations at some of the bases selected for consolidation. Several of the selected locations are in Maryland, including Anne Arundel County (Fort Meade) and Harford County (Aberdeen Proving Ground).
C. Enhanced Use Leases
We understand that, as part of the implementation of BRAC, the federal government is leasing land at military installations to private developers pursuant to 10 U.S.C. § 2667, which authorizes Enhanced Use Leases ("EULs"). For example, a master lease for Aberdeen Proving Ground includes a ground lease authorized by the EUL statute. See, e.g., Master Agreement to Lease for Enhanced Use Leases, Aberdeen Proving Ground (Maryland Boulevard Site) between United States of America, Acting by and through the Secretary of the Army as the Government and OPUS East, L.L.C. as the Developer (September 25, 2006). The ground lease also indicates that the improvements will be owned by the private developer for the term of the lease. *Page 15 
We also understand that some of the leased sites at Fort Meade will be on federally owned land within the enclave of exclusive federal jurisdiction, but outside of the secured area and will be totally or partially accessible by the general public. Under the lease, the private developer will construct and operate various types of improvements on that land. These improvements will be made available to private defense contractors, as well as other sublessees who may be unrelated to the military operations and the defense contractors.
Since the EULs will create private interests in federally owned property, you have asked whether any of the private interests in real property within the military installations will be subject to property tax or impact fees. You have also posed the same question as to non-military sites of exclusive federal jurisdiction.
 II Taxation of Private Interests in Real Property in Federal Enclaves
A. Whether the Federal Government Has Consented to StateTaxation
No federal law generally waives immunity as to state and local property taxes. Thus, to determine whether federal tax immunity has been waived with respect to a lease of property within a federal enclave to a private party, one must look to the law governing the particular lease. For example, Congress has consented to the taxing of private interests in federal property in the statute authorizing EULs at military installations. It provides, among other things, that:
 The interest of a lessee of property leased under this section may be taxed by State or local governments. A lease under this section shall provide that, if and to the extent that the leased property is later made taxable by State or local governments under an Act of Congress, the lease shall be renegotiated.
10 U.S.C. § 2667(f). *Page 16 
B. Whether Maryland Has Retained Jurisdiction to Tax
At one time in Maryland, the State generally ceded exclusive jurisdiction over federal enclaves without significant reservations.See63 Opinions ofthe Attorney General 332, 333 (1978). Currently, the State retains jurisdiction over federal enclaves to the extent permitted by federal law and consistent with federal purposes, subject to any other State law governing a specific federal acquisition. The State's reservation of jurisdiction is set forth in statute as follows:
 With respect to land that the United States or any of its units leases or otherwise holds in the State, the State reserves jurisdiction and authority over the land and over persons, property, and transactions on the land to the fullest extent that is permitted by the United States Constitution and that is not inconsistent with the governmental purpose for which the land is held.
SG § 14-102(a) (emphasis supplied).[2] By reserving "jurisdiction and authority . . . over the land" and "over . . . property," the State reserved the power to impose property tax on the property interests in federal enclaves to the fullest extent permitted by federal law.
Excepted out of the general statement in SG § 14-102(a) are acquisitions of land in Maryland by the United States on or before May 31, 1943,[3] for which the State ceded jurisdiction under specified laws. The statute lists those laws as follows:
 (1) Chapter 193, §§ 3 and 4, of the Acts of the General Assembly of 1874;
 (2) Chapter 395, §§ 13 and 14, of the Acts of the General Assembly of 1874; *Page 17 
 (3) Chapter 67, § 21, of the Acts of the General Assembly of 1900;
 (4) Chapter 743, §§ 2 and 3, of the Acts of the General Assembly of 1906;
 (5) Chapter 194 of the Acts of the General Assembly of 1908; or
 (6) any other act that gave consent for the acquisition of property and ceded jurisdiction with respect to that property.
SG § 14-102(b). To our knowledge, most of the real property at Fort Meade and Aberdeen Proving Ground was obtained by the federal government prior to May 31, 1943, and likely falls within one of these categories.[4]
However, even with respect to property that falls within one of the six categories under SG § 14-102(b), the State has asserted authority to tax to the fullest extent permitted by federal law. In particular, the relevant statute provides: *Page 18 
 Property subject to assessment and tax under this article includes property owned or leased by the United States or any agency or department of the United States, to the fullest extent possible under the Constitution of the United States and the laws of the United States.
Annotated Code of Maryland, Tax-Property Article ("TP"), § 6-101(a)(2) (emphasis supplied).[5] At the time this provision was enacted, the General Assembly made clear that it superseded the exemptions for the acquisitions set forth in SG § 14-102(b)(l)-(6) by providing "[t]hat any and all public general laws or public local laws or any part or parts thereof inconsistent with the provisions of this Act are hereby repealed to the extent of any such inconsistency." Chapter 71, § 2, Laws of Maryland 1945.
Accordingly, for property tax purposes, State law authorizes the taxing of the private interests in all federal property whenever permissible under federal law.
C. Meade Heights
The relationship between the federal EUL statute and the Maryland property tax law was addressed by the Court of Appeals in a case involving property at Fort Meade.[6] Meade Heights, Inc. v. State TaxCommission, 202 Md. 20, 95 A.2d 280 (1953). In that case, the military had leased land in an area of exclusive federal jurisdiction within Fort Meade to a private developer under an EUL. The developer built and owned military housing units on that land. The Court first noted that the EUL statute[7] that authorized the leases had explicitly waived tax immunity for the leasehold interests. 202 Md. at 24. Citing the predecessor of current TP § 6-101(a)(2), the Court then observed that Maryland law provided for the assessment *Page 19 
and taxation of real property owned by the federal government, including leasehold interests in that property, to the fullest extent permitted by federal law. Id. at 25-28. The Court concluded that "it is . . . clear that private interests in government property are taxable to their full value. . . . In the instant case, Congress has definitely consented to the taxation of the lessee's interest, whatever that may be."Id. at 28 (citations omitted). Accordingly, the private interests in the improvements located at Fort Meade were taxable.
Following the Meade Heights decision, the Legislature enacted a statute explicitly setting forth the tax treatment of private interests in federally-owned property. Chapter 884, Laws of Maryland 1961, nowcodified as TV § 6-102(e). That provision now reads, in relevant part:
 Unless exempted under [TP] § 7-211, § 7-211.1, or 7-501. . ., the interest or privilege of aperson in property that is owned by the federal government,. . . or an agency or instrumentality of the federal government, . . . is subject to property tax as though the lessee or the user of the property were the owner of the property, if the property is leased or otherwise made available to that person:
 (1) by the federal government, . . . or an agency or instrumentality of the federal government. . .; and
 (2) with the privilege to use the property in connection with a business that is conducted for profit.
TP § 6-102(e); see also United States v. City of Detroit, 355 XJ .S.466 (1958) (holding that similar Michigan statute was constitutional). Thus, a private interest created pursuant to an EUL for a for-profit entity in federally owned property in an exclusive federal enclave is taxable in Maryland, unless State law provides an exemption from taxation. *Page 20 
D. Exemptions under Maryland Law
Assuming that a particular private property interest falls within the waiver to federal tax immunity set out above, the next step is to determine if the property interest is exempt under Maryland tax law. Several tax exemptions could apply.
TP § 7-210 exempts all government-owned property devoted to a governmental use or purpose. However, as noted above, TP § 6-102(e) creates an exception to that rule and imposes a tax on government owned property that is leased or otherwise made available to a private, for-profit entity using it for business purposes. Accordingly, the land leased to the private party would be taxable under TP § 6-102(e) to the lessee as if that lessee were the owner.[8] TP §§ 7-211 and 7-501
provide exemptions to property otherwise taxable under TP § 6-102(e).
TP § 7-211(a) exempts an interest in federally owned property if the property is located within defined boundaries of a military installation and is used for national defense, which includes homeland security, or military housing. Since the purpose of 10 U.S.C. § 2667 is to authorize the lease of nonexcess military land, some of the property leased under an EUL may fall within this exemption.
TP § 7-211(c) creates an exemption when there is a payment in lieu of tax agreement (PILOT). Thus, if the federal go vernment were to enter into a PILOT with the taxing authorities, the interest of the private party in the federally owned property would be exempt from property taxes. *Page 21 
TP § 7-501(a) authorizes certain counties (including Anne Arundel County) to create by law an exemption from county property tax for property that would otherwise be subject to tax under TP § 6-102(e). We are not aware of any current local law that creates such an exemption in Anne Arundel County.
TP § 7-501(b) creates another PILOT-related exemption. It allows the governing body of any municipality or of any county (other than Worcester County) to authorize by law an exemption for property that would be taxable under TP § 6-102(e), if a PILOT is executed with the local governing body.
TP § 7-211.2 creates a related exemption which is only applicable when the federal government owns a partial interest (at least 50%) in the property — or in the entity which owns the property — and the property is located on federally owned land within a military installation and used for national defense purposes or military housing.
In sum, one cannot draw a definitive conclusion whether a particular private interest in federal property is taxable under TP § 6-102(e) until the applicability of the exemptions listed above has been analyzed. That determination depends on the terms of the lease and other instruments governing the relationship between the lessee and federal government, any PILOT with the State or local government, related local laws, and information about the activities of the lessee on the property.
E. Taxability of Privately Owned Improvements on Federal Land
It is our understanding that, under the EUL lease at Aberdeen Proving Ground, the private entity that leases the federal land will construct and own the improvements on that land for the term of the lease.See Part I.C. of this opinion. Thus, those improvements will be privately-owned property, not a private interest in government-owned property. That is a critical distinction that affects the application of some of the State tax provisions and exemptions outlined in the previous section of this opinion. *Page 22 
Under TP § 6-101, all real property is generally taxable to the owner. However, government-owned property devoted to a governmental use is exempt under TP § 7-210.[9] That exemption does not apply toprivately owned improvements regardless of whether they are located on government land. The exemptions set forth in TP §§ 7-501 and 7-211 apply to government property made taxable by § 6-102(e) and do not apply to privately owned property located on government owned property.See 55 Opinions of the Attorney General 339, 343 (1970) (privately owned cargo handling facility on land owned by Maryland Port Authority was taxable); Allied Hangars, Inc. v. Supervisor of Assessments of St.Mary's County, (Case No. 1856 Sept. Term, 2002) (Court of Special Appeals, August 19, 2003) (unreported) (privately owned hangars located on county owned airport held taxable).[10]
The privately owned improvements constructed at the EUL sites would be taxable to the private owner under the general taxability of all property (TP § 6-101) and the exemptions in TP § 7-210 andTP § 7-211 would not apply. Accordingly, there would be no exemption applicable to privately owned improvements located on federal property unless the ultimate use fell within another exemption or credit otherwise authorized by the Tax-Property Article.
F. Summary
When real property in an enclave of exclusive federal jurisdiction in Maryland is leased to a private developer, the leasehold interest in that property is subject to State and local property taxes if the federal government has waived its tax immunity and if the property interests are not otherwise exempt from tax under *Page 23 
Maryland law. Under 10 U.S.C. § 2667, the federal government has waived tax immunity with respect to EULs on military bases. Whether the same result pertains in leases of property outside military reservations depends on the statute governing the particular leases.[11]
 Ill Applicability of Impact Fees in Federal Enclaves
You also asked whether a private lessee of real property within an exclusive federal enclave would be required to pay impact fees to the local government.
A. Impact Fees
An impact fee is typically imposed by a local government on a development to help defray the cost of infrastructure improvements and public facilities necessary to support the new development. SeeRiverwalk Apartments, LLC v. Twigg, 396 Md. 527, 532 n. 3, 914 A.2d 770
(2007); 89 Opinions of the Attorney General 212, 213 (2004). May a local government assess such a fee against a development in an area of exclusive federal jurisdiction? A threshold question is whether a particular impact fee is properly characterized as a regulatory fee or a tax — and, if a tax, what type of tax. If the impact fee is a tax, there must be a determination — similar to the analysis in the previous section of this opinion — whether and to what extent the federal government has waived its tax immunity. If the impact fee is a regulatory fee, there must be an analysis of the extent to which the State regulatory regime applies to the federal enclave.
B. Characterization of Impact Fee as Fee or Tax *Page 24 
If a development is totally within a federal enclave, federal law would control the determination whether a charge is a regulatory fee or a tax.[12] In Massachusetts v. United States, 435 U.S. 444 (1978), the Supreme Court set forth a test used to distinguish fees from taxes for the purpose of determining whether an intergovernmental immunity applied. That test involved an examination of three questions:[13] (1) Does the charge discriminate against the user ? (2) Does it represent a fair approximation of the cost of the benefits received by the user from the program? and (3) Is the aggregate collection excessive in relation to the cost of the benefits provided by the program?[14] See alsoMaine v. Department of Navy, 973 F.2d 1007, 1012-13 (1st Cir. 1992) (applying Massachusetts case in context of State fees charged against a federal agency).
Impact fees that are designed to offset general infrastructure costs probably do not sufficiently benefit a development within a federal enclave to be deemed a regulatory fee and, therefore, would be considered a tax. Cf. Eastern Diversified Properties, Inc. v. MontgomeryCounty, 319 Md. 45, 570 A.2d 850 (1990) *Page 25 
(characterizing impact fee as tax under Maryland law because primary purpose was to raise revenue). However, any decision would have to be based on the purpose and method of imposition of the specific impact fee.
C. Analysis of Impact Fee as a Tax 1. Type of Tax
If an impact fee is determined to be a tax, further analysis is necessary to determine the type of tax. This analysis is necessary because the federal government may have waived immunity as to one type of tax, but not another. For example, Congress has allowed the imposition of certain taxes for activity within an enclave under the Buck Act, 4 U.S.C. §§ 104-110, which addresses sales, use and income taxes. And, as seen above, in 10 U.S.C. § 2667, Congress has tailored a specific waiver for a private lessee's interest in federal property — i.e., a waiver as to property taxes.
If properly characterized as a tax, an impact fee clearly would not be an income tax or sales and use tax. An impact fee might be characterized as a property tax or an excise tax. While a property tax is imposed upon one's general ownership of property, an excise tax is one imposed "upon a particular use of property or the exercise of a single power over property incidental to ownership." See Bromley v. McCaughn,280 U.S. 124, 136 (1929); Murphy v. IRS, 493 F.3d 170, 184-85 (D.C. Cir. 2007),cert, filed, 76 USLW 3324 (Dec 13, 2007).
A similar analysis is used under State law. In Waters landing ltd.Partnership v. Montgomery County, 337 Md. 15, 650 A.2d 712 (1994), the Court of Appeals used a three-part test to determine whether an impact fee was a property tax or excise tax. First, the Court considered the label given to the charge by the legislative body that enacted it. While the title of the charge is not conclusive, the label chosen by the legislative body is entitled to considerable deference. 337 Md. at 25.
Second, the Court indicated that the "actual operation and practical effect" of the tax must be evaluated. A property tax is charged based on ownership alone while an excise tax is imposed upon the performance of an act, the engagement in an occupation, or the enjoyment of a privilege. Id. at 25-26. *Page 26 
Third, the method of computing the tax must be considered. If it is based strictly on value and creates a lien on the property, it is a property tax. If it is measured by the extent to which a privilege is exercised without consideration of value, it is an excise tax.Id. at 26.
2. Local Excise Taxes in Federal Enclaves
Based on both the State and federal test, it seems likely that an impact fee would be considered an excise tax as it is generally triggered and measured by the development of the property and not based on the general ownership of the property. However, the activity that triggers the impact fee occurs entirely within the enclave. The constitutional grant of exclusive legislative authority within a federal enclave precludes state jurisdiction to impose an excise tax on property within the enclave unless there is a specific congressional deferral to state authority or the state reserved such authority at the time it ceded jurisdiction. Surplus Trading Co. v. Cook, 281 U.S. 647 (1930). Therefore, the exclusiveness of the federal jurisdiction within the enclave would preclude state imposition of a tax on an activity carried out entirely within the enclave unless that authority has been reserved at the time of federal acquisition or Congress subsequently waived tax immunity. There is no general waiver by Congress that would allow a state to impose an excise tax on development within an enclave.
D. Analysis of Impact Fee as a Regulatory Fee 1. General Rule
As a general rule,[15] if Congress has exclusive legislative authority over a federal enclave, federal instrumentalities or property in that enclave are not subject to state regulation "without a clear expression or implication to that effect" by Congress. Hancock v.Train, 426 U.S. 167, 179 (1976). In Hancock, the Court stated: *Page 27 
 Because of the fundamental importance of the principles shielding federal installations and activities from regulation by the States, an authorization of state regulation is found only when and to the extent there is a clear congressional mandate, specific congressional action that makes this authorization of the state regulation clear and unambiguous.
Id. (internal quotation marks and footnote omitted);[16] see also Paulv. United States, 371 U.S. 245, 263 (1963) ("The cases make clear that the grant of `exclusive' legislative power to Congress over enclaves that meet the requirements of Art. I, s 8, cl. 17, by its own weight, bars state regulation without specific congressional action"). While Congress has consented to particular types of regulation by the states,[17] we are not aware of any overarching statement consenting to local impact fees. Additionally, a state reservation of other jurisdictional authority, such as taxing authority, would not authorize the enforcement of an ordinance involving the permit for, and control of, construction because that would be outside the reservation and, therefore, outside of the state's jurisdiction. West River ElectricAssociation, Inc. v. Black Hills Power and Light Company, 918 F.2d 713
(8th Cir. 1990); City of Birmingham v. Thompson,200 F.2d 505 (5th Cir. 1952). *Page 28 
 2. Continuation of State Regulation at Time of FederalAcquisition
Even when the federal government obtains exclusive jurisdiction over an area, local laws that existed at the time the federal government acquired exclusive jurisdiction remain in effect as law of the federal territory unless they were specifically rejected or abrogated by legislative action or are inconsistent with other federal law. JamesStewart Co. v. Sadrakula, 309 U.S. 94, 99-104 (1940); Paul,supra, 371 U.S. at 265. "This assures that no area however small will be left without a developed legal system for private rights." JamesStewart, 309 U.S. at 100. However, a subsequent enactment by the local government would normally not be effective within the federal enclave without congressional action. Id.
 3. Application to Aberdeen Proving Ground and Fort Meade
Impact fees are a relatively recent government response to the public costs of new development and most likely did not exist when the federal government first obtained exclusive jurisdiction of most of its enclaves in Maryland. Therefore, they would probably not be part of the existing law that remained applicable in the enclave at the time the property was ceded to the federal government. However, if they were, there would still have to be a determination that the regulatory scheme that included those fees was not inconsistent with the federal authority authorizing the construction.
It is our understanding that the properties that are the subject of EULs at both Aberdeen Proving Ground and Fort Meade are in areas of exclusive federal jurisdiction ceded by the State prior to 1943.See Part II. B of this opinion and footnote 4 above.
Impact fees were not authorized in Harford County until authorized by the General Assembly by Chapter 389, Laws of Maryland 2004 and implemented by Bill No. 05-21 which became effective on June 10, 2005. That ordinance authorized school related impact fees imposed only on new residential development, not commercial development. Accordingly, impact fees were not in effect at the time of the transfer of exclusive jurisdiction to the federal government and even currently, would not apply to the development planned under the EULs under review. Consequently, impact fees cannot be effectively imposed now at the Aberdeen Proving Ground. *Page 29 
Impact fees were originally authorized in Anne Arundel County by Chapter 350, Laws of Maryland 1986 and implemented in 1987 as Bill No. 50-87, authorizing fees related to schools and transportation. Therefore, impact fees as a regulatory fee could not be imposed at the Fort Meade site.
4. Summary
Impact fees that are a prerequisite to development would be triggered by events occurring entirely within an enclave of exclusive federal jurisdiction. Accordingly, regardless of whether the development was being done by the government or a private party, imposition of impact fees on development within an enclave of exclusive federal jurisdiction would not be permitted unless that regulatory scheme fell within the jurisdiction reserved by the State, had become part of the law for that enclave at the time the property was ceded to the federal government, or was otherwise permitted by congressional action.
 IV Conclusion
It is our opinion that real property located within an area of exclusive federal jurisdiction on a military base and leased to a private developer is subject to State and local taxation to the extent that the federal government has waived its tax immunity — as it has in the statute authorizing EULs on military installations. Whether the property interest is taxable or exempt from taxation is then determined under Maryland law.
Whether a development within a federal enclave of exclusive jurisdiction would trigger impact fees may depend on whether the federal government has waived immunity as to excise taxes. Alternatively it may depend on whether the State regulatory regime including the impact fee existed at the time the property was ceded to the federal government or whether Congress later consented to that regulatory regime. *Page 30 
The same analysis would apply to real property in an enclave of exclusive federal jurisdiction that is not on a military base, although some waiver provisions may apply only on military installations.
Douglas F. GanslerAttorney General
David M. LyonAssistant Attorney General
Robert N. McDonaldChief Counsel Opinions and Advice
[1] In this context, the term "jurisdiction" refers to legislative jurisdiction. See United States Constitution, Article I, § 8, cl. 17;see also Offutt Housing Co. v. County ofSarpy, 351 U.S. 253, 256
(1956).
[2] The predecessor of SG § 14-102(a) was originally enacted in 1943.See Chapter 687, Laws of Maryland 1943 originally codified as
Article 96, § 41.
[3] This date describes acquisitions made prior to the effective date of the predecessor of SG § 14-102(a). See note 2 above.
[4] Aberdeen Proving Ground was originally ceded to the federal government in 1917 with additional parcels acquired thereafter. We have been advised that the parcels which make up the Maryland Boulevard Site, which is the site of the EUL, were acquired from April 1940 thru October 1942. Letter of Robert J. Penn, Assistant Chief, Real Estate Division ofthe Baltimore District, U.S. Army Corps of Engineers, Department of Armyto David M. Lyon, Assistant Attorney General (October 21, 2005).
Therefore, that property would have been acquired with exclusive jurisdiction under existing state law.
Fort Meade was also originally ceded to the federal government in 1917. In the late 1990's, approximately 265 additional acres were ceded to Fort Meade as a security buffer. SG § 14-102(a). Our review of the EUL sites indicate that they were part of the original transfer and that therefore the State would have ceded exclusive jurisdiction to the federal government.
[5] This statute was originally enacted as emergency legislation in 1945. Chapter 71, Laws of Maryland 1945, originally codified as Article 81, § 6(1).
[6] The case involved property in four other federal enclaves in Maryland, although the Court only described leases at Fort Meade.
[7] The EUL law was then codified at 10 U.S.C. § 1270d, the predecessor to 10 U.S.C. § 2667.
[8] TP § 6-102(e) would not apply if the private party was acting simply as the agent of the federal government carrying out a specific government purpose under direct control of the government and without discretion even as to the daily activities and if it is ultimately the government which is responsible for the activity satisfying a legal obligation. See Letter from Norman E. Parker, Jr., Deputy AttorneyGeneral, and Jack Schwartz, Chief Counsel, Opinions and Advice to RonaldW. Wineholt, Director of SPAT (November 22, 1996). That restriction rarely applies and does not seem applicable to the current leases under consideration at Fort Meade and Aberdeen Proving Ground, as we understand them.
[9] As outlined in Part II.C-D above, an exception to the ownership rule is established in TP § 6-102(e) when the government owns the property and either leases it or otherwise makes it available to a private entity for use in a business for profit. Mayor of Baltimore v.Boitnott, 356 Md. 605, 741 A.2d 1079 (1999). That property then becomes taxable to the private lessee, unless an exemption applies.
[10] See also Dollar Thrifty Automotive Group, Inc., et al. v.Supervisor of Assessments of Anne Arundel County, Md. Tax Court Case Nos. 06-RP-AA-0216 through 0220 (August 14, 2007) (denying exemption under TP § 7-211(b) sought by lessee of government-owned land for the improvements owned by lessee because taxation was based on legal title being in the lessee).
[11] A military website acknowledges that taxability of developments under an EUL "is a case by case, locality by locality determination."http://eul.army.mil/faqs.htm. See also 4 United States General Accounting Office, Principles of Federal Appropriations Law Ch. 16, § 2 (2d ed. March 2001), available at 2001 WL 34038479 (EUL statute permits state and local taxation of interests of lessees);Memorandum from R. Chuck Mason, Legislative Attorney, American LawDivision of the Congressional Research Service to the Honorable C.A,Ruppersberger (December 11, 2007).
[12] The label given to a charge by state or local law is not controlling under federal law. National Railroad Passenger Co v. City ofNew York, 882 F.2d 710, 715 (2[nd Cir. 1989).
[13] The Massachusetts case concerned the annual aircraft registration tax imposed by the federal government under the Airport and Airway Revenue Act on all aircraft using the national airways. The revenue generated by the tax was paid to the Airport and Airway Trust fund which was dedicated to the expansion, improvement and maintenance of the air transportation system. The case involved the question whether imposition of the tax on police helicopters violated the implied immunity of the states from federal taxation. Applying the three-part test outlined in the text above, the Supreme Court concluded that the registration tax represented a user fee that was fairly applied to all users of the national airways, including the states, that did not exceed the cost of the benefits received by the user, and that was structured to produce revenue less than the cost of the program.
[14] This test is somewhat different from the criterion applied in Maryland. Under Maryland law, the characterization of a development related charge as a tax or a fee depends on whether the purpose of the enactment is primarily revenue raising or regulatory. EasternDiversified Properties, Inc. v. Montgomery County, 319 Md. 45,570 A.2d 850 (1990).
[15] It is not possible or appropriate to catalog in this opinion the myriad laws that govern the application of State law in a federal enclave. See, e.g., Assimilative Crimes Act, 18 U.S.C. §§ 7, 13. Rather, we focus in this section on laws pertinent to State and local impact fees.
[16] In Hancock, the federal Clean Air Act required federal installations to meet state environmental standards. A federal installation in Kentucky satisfied the requirements, but the federal government refused to seek a permit from the state. The State of Kentucky argued that an application was required because that was the method for collecting information to develop emission standards and to monitor compliance. The Supreme Court held that there was no clear statement that Congress wanted the federal government to participate in the local process other than meeting the requirements. Without a clear statement, the Court refused to expand state regulatory authority over an exclusive federal enclave.
[17] For example, in response to Hancock, Congress amended the Clean Air Act and, using a clear, precise statement, required the federal government to not only meet local environmental standards, but also to comply with the local regulatory process, including the payment of regulatory fees. Clean Air Act, 42 U.S.C. § 7418. *Page 31